Antonio **SOLIS,** Appellant (Defendant),

v.

The **STATE** of Wyoming,
Appellee (Plaintiff).

No. 92–137.

Supreme Court of Wyoming.

May 12, 1993.

Leonard D. Munker, State Public Defender, Deborah Cornia, Asst. Public Defender, Gerald M. Gallivan, Defender Aid Program, and Joel Murphy, Student Intern for the Defender Aid Program, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., Theodore E. Lauer, Director of the Prosecution Assistance Program, and Stacie Kraly, Student Intern for the Prosecution Assistance Program, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

MACY, Chief Justice.

Appellant Antonio Solis appeals from the district court's order denying his motion to suppress statements he made to the police. Appellant, a Mexican national, claims that his statements should have been suppressed because he was advised of his *Miranda* rights in English rather than in his native Spanish.

We affirm.

Appellant states the issue as follows:

The Defendant's statements should have been suppressed because:

(1) he was the subject of custodial interrogation, and

(2) the record does not demonstrate a valid waiver.

On November 17, 1991, Steven Rozier and Kevin McGrath, detectives for the Gillette Police Department, were dispatched to High Plains Pawn & Trading Co. to investigate a burglary. Several guns, jewelry, and some change were missing. The burglar apparently used a motor vehicle with a spare tire mounted on the front to push in the shop's rear door. The door contained a visible imprint of the tire as well as indentations made by the bolts used to affix the vehicle's license plate. While investigating the burglary, Detective McGrath observed a Chevrolet Blazer with a tire mounted on its front parked in front of the nearby Goings Hotel. The Blazer's spare tire matched the markings on the shop's rear door, and the studs used to affix the Blazer's license plate holder matched indentations in the door.

The desk clerk at the Goings Hotel informed the detectives that Appellant owned the vehicle and that he could be found in room 61. The detectives knocked on Appellant's door, and he answered it. Detective Rozier displayed his badge and explained that they wanted to talk to him about a burglary. Appellant nodded and stepped back so the detectives could enter his room. The detectives asked Appellant whether he owned the Chevrolet Blazer parked in front of the hotel. Appellant responded affirmatively. After determining that Appellant owned the Blazer, the detectives asked him if he would be willing to accompany them to the police station. Appellant again responded affirmatively. The detectives described Appellant's responses during this time as being a combination of broken English, affirmative nods of the head, and either "yes" or "si." Detective Rozier was

under the impression that Appellant could understand his questions.

Detective Rozier advised Appellant of his *Miranda* rights upon arriving at the police station. Appellant indicated either verbally or by nodding his head that he understood each right. After being informed of his rights, Appellant agreed to answer questions about the burglary. Detective Rozier told Appellant that it was obvious his vehicle had been used in the burglary and that he wanted to know where the stolen property was located. Appellant initially acted as if he did not understand Detective Rozier's questions. Detective Rozier felt that Appellant was playing "games" and that an interpreter might force him to be more cooperative. The detective telephoned a bilingual probation officer to ask for interpretation assistance. The detective canceled his request a short time later because Appellant became more responsive. Appellant told the detectives that the guns were located on a ranch, and he agreed to accompany the detectives to the ranch. Detective Rozier did not know where the ranch was located, but Appellant was able to adequately direct the officers even though it was approximately fifty miles north of Gillette. Once they arrived at the ranch, Appellant directed the detectives to a bed in the bunkhouse where the guns were hidden. Appellant was arrested after the guns were safely retrieved.

Two days later, Detective McGrath, accompanied by the bilingual probation officer, interrogated Appellant for a second time. Detective McGrath's motive for interrogating Appellant again was to confirm his prior statement and to ensure that Appellant was the only person involved in the burglary. Detective McGrath explained that he brought the interpreter along "[j]ust in case" he could not understand Appellant or Appellant could not understand him. The interpreter advised Appellant of some, but not all, of his *Miranda* rights. The detective questioned Appellant in English, and the interpreter translated the questions into Spanish. Appellant gave a written statement in Spanish following his interview.

The deputy county and prosecuting attorney subsequently charged Appellant with aggravated burglary in violation of Wyo. Stat. § 6–3–301(a) and (c)(i) (1988). On March 10, 1992, Appellant pleaded not guilty. On March 13, 1992, he filed a motion to suppress, alleging that he involuntarily waived his *Miranda* rights because his understanding of the English language was limited and he was unfamiliar with the American criminal justice system. Following a hearing, the district court denied the motion to suppress the statements Appellant made in the first interview at the police station. The court reasoned that Appellant was not subject to custodial interrogation and that, even if he were, he voluntarily waived his *Miranda* rights. The court, however, granted the motion to suppress the statements Appellant made in the second interview because it was custodial interrogation and Appellant was not fully informed of his *Miranda* rights.

On May 29, 1992, Appellant entered into a plea agreement with the deputy county and prosecuting attorney. The agreement required Appellant to enter a conditional plea of guilty to simple burglary but specifically reserved Appellant's right to appeal from the district court's partial denial of his motion to suppress. W.R.Cr.P. 11(a)(2). The district court accepted the conditional plea, and Appellant filed a timely appeal with this Court.

■ Appellant argues on appeal that the trial court should have suppressed any statements he made to the police because (1) the first interview constituted custodial interrogation and (2) the detectives failed to obtain a voluntary waiver of his rights before questioning him. When analyzing the adequacy of a defendant's waiver of his *Miranda* rights, we follow the two-step approach suggested by Appellant and first determine whether the questioning constituted custodial interrogation. We use this approach because *Miranda* warnings are required only when a defendant is subject to custodial interrogation. *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); *Wunder v. State*, 705 P.2d 333, 334 (Wyo.1985). However, in this

particular case, it is not necessary to consider whether Appellant's statements were induced by custodial interrogation because, even if he were custodially interrogated, the record contains sufficient evidence to support the trial court's finding that Appellant knowingly and intelligently waived his *Miranda* rights.

In *Frias v. State*, 722 P.2d 135 (Wyo. 1986), we defined the inquiry to be used when determining whether a defendant adequately relinquished his *Miranda* rights:

"Echoing the standard first articulated in *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), *Miranda* holds that '[t]he defendant may waive effectuation' of the rights conveyed in the warnings 'provided the waiver is made voluntarily, knowingly and intelligently.' 384 U.S. [436], at 444, 475, 86 S.Ct. [1602], at 1612, 1628[, 16 L.Ed.2d 694 (1966)]. The inquiry has two distinct dimensions. First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." (Emphasis [omitted].)

722 P.2d at 141–42 (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1140–41, 89 L.Ed.2d 410 (1986) (citations omitted)). *See also Bueno–Hernandez v. State*, 724 P.2d 1132 (Wyo.1986), *cert. denied*, 480 U.S. 907, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987). The prosecution has the burden of proving by a preponderance of evidence that the defendant's waiver is voluntary, knowing, and intelligent. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *Garcia v. State*, 777 P.2d 603 (Wyo.1989).

The test's first prong asks whether Appellant's waiver was the product of a free and deliberate choice. Appellant claims the detectives deceived him into thinking that, if he were to show them where the guns were located, they would release him so he could go to work the next day. Appellant's bald statement of his erroneous impression is the only evidence in the record of the detectives' alleged deception. Nothing in the detectives' testimony indicates that they offered him some sort of "deal." The trial judge listened to Appellant and the detectives testify and accorded their testimony the weight and credibility which he thought was appropriate. We cannot discern any error in the trial court's finding that Appellant's waiver was not the product of deception.

The second inquiry under the *Frias* test is whether Appellant was sufficiently aware of the nature of the right being abandoned and the consequences of his decision to abandon that right. No bright line test exists for determining when a defendant sufficiently comprehends his rights to effectuate a valid waiver. Each defendant's waiver must be analyzed in light of his particular background, experience, and conduct. *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). The constitution does not require that a defendant know and understand every possible consequence of a waiver of the Fifth Amendment privilege. *Colorado v. Spring*, 479 U.S. 564, 574, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987).

The testimony of several witnesses at the suppression hearing supported Appellant's claim that he was unable to understand the *Miranda* warnings. Appellant testified, through an interpreter, that he did not understand what the detectives said to him at the police station. Appellant's brother testified that Appellant had difficulty understanding English. When the brothers' boss at the cement plant would order him to perform a task, Appellant generally could not understand the order unless it was translated into Spanish. According to the bilingual probation officer who interpreted at the second interview, Appellant could

understand some words which were said to him but he could not properly express himself in English. He thought that Appellant could understand a specific question such as where was something located. The interpreter did not think that Appellant understood the questions asked by Detective McGrath in the second interview.

Other testimony tended to show that Appellant's understanding of the English language was sufficient for him to make a knowing and intelligent waiver of his *Miranda* rights. Appellant's ex-girlfriend testified that she spoke to Appellant in English during their relationship; she did not speak any Spanish. She stated that sometimes Appellant would understand her and other times she would have to repeat her statements. She had also observed him reading magazines written in English and watching English-speaking television programs. Appellant was able to read notes she had written in English. At one point following his arrest, she explained a proposed plea bargain to Appellant, which he appeared to understand.

 The trial court cited several other factors which indicated that Appellant adequately understood English: Detectives Rozier and McGrath communicated with Appellant at a level which enabled them to learn where he worked, that no one else had been driving the vehicle, and that Appellant had been drinking on the night of the burglary; Appellant was able to direct the officers to the guns' location; Appellant previously encountered our criminal justice system when he was convicted of driving under the influence; and Appellant had been in the United States off and on for nine years and worked here during most of that time. Both officers believed that Appellant understood their questions. Most importantly though, Appellant indicated either physically or verbally that he understood each *Miranda* right after it had been read to him.

The trial court found that the preponderance of evidence supported a finding that Appellant's waiver was made voluntarily, knowingly, and intelligently. Given the totality of the circumstances surrounding Appellant's interrogation, we conclude that sufficient evidence existed to support the trial court's decision.

Affirmed.