2004 WY 127

MAM, Appellant (Defendant/Petitioner),

v.

STATE of Wyoming, DEPARTMENT OF FAMILY SERVICES; and State of Wyoming ex rel., NTE, minor child, Appellees (Plaintiffs/Respondents).

No. C–03–13.

Supreme Court of Wyoming.

Oct. 29, 2004.

Representing Appellant: Barbara A. Baker, Sheridan, Wyoming.

Representing Appellees: Patrick J. Crank, Attorney General; Robin Sessions Cooley, Deputy Attorney General; and Dan S. Wilde, Senior Assistant Attorney General, Cheyenne, Wyoming.

Guardian Ad Litem: Ellen Rutledge, Sheridan, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] This is an appeal from an order and judgment on the pleadings in which the district court denied a petition to declare the non-existence of a father-child relationship and denied a motion to set aside a stipulated paternity order. Finding an abuse of discretion under the particular facts of this case, we reverse.

## ISSUES

[¶ 2] The appellant states the issues as follows:

1. Did the district court err by applying the wrong statute?

2. Was Appellant entitled to relief from the Stipulated Order for paternity?

3. Is it a violation of public policy to promote the legal fiction that Appellant is the biological father in light of evidence to the contrary?

[¶ 3] The appellee presents a single issue: Whether the district court erred in denying appellant's request for relief from the stipulated order of paternity?

[¶ 4] Finally, the guardian-ad-litem identifies two issues:

I. Did the District Court [err] as a matter of law when it applied statutes enacted after the action was commenced, and if so, can the Appellant's claim proceed pursuant to the former statutory scheme?

II. Does public policy support actions for disestablishment of paternity?

[¶ 5] We will restate the determinative issue as follows:

Was it an abuse of discretion for the district court to deny relief from judgment under W.R.C.P. 60(b)(6)?

## FACTS

[¶ 6] A child was born on November 16, 1999. Because the child's mother applied for child support services or public assistance, the State of Wyoming filed in the district court on May 18, 2000, a Petition to Establish Paternity and Support. That petition contained the following allegations of fact:

9. The putative father [the appellant] had sexual access to the mother ... at the time of conception of the minor child and there are no other known persons who could be presumed or alleged to be the father of the minor child.

10. [The appellant] is the natural and biological father of the minor child.

[¶ 7] Six days after being served with a copy of the petition, and without obtaining counsel, the appellant signed a Stipulated Order Waiving Informal Hearing and Order Waiving Genetic Testing. The record does not contain, nor does it make reference to a separate waiver having been signed by the appellant, and there is no indication that the appellant waived the informal hearing or genetic testing in open court after having been

advised of the existence and nature of those rights. Neither the petition nor the summons and order to appear served with it mention any right to genetic testing. The stipulated order reads in full as follows:

THE PARTIES having so stipulated, as appears from their signatures below, personally or through their respective attorneys, waive the informal hearing scheduled for June 23, 2000, at 4:00 p.m. being authorized by W.S. § 14–2–108;

IT IS HEREBY ORDERED that no informal hearing shall be had in this matter.

IT IS FURTHER ORDERED that genetic testing is waived in this matter as the Respondent's [*sic* ] [mother and the appellant], have signed the Affidavit Acknowledging Paternity stating [the appellant] is the natural and biological father of [the child].

The State concedes that this order is in error inasmuch as the appellant has never signed an affidavit acknowledging paternity.[1]

[¶ 8] Some time after the birth of the child, the mother began to question whether the appellant was the child's father. When the child was approximately two years old, voluntary genetic testing established with certainty that the appellant was not the child's father, and further identified with certainty another man to be the father. The mother requested that the State Child Support Enforcement Office assist her in correcting the error, but was told nothing could be done. The appellant then filed his petition and motion.

## STANDARD OF REVIEW

[¶ 9] W.R.C.P. 60(b) provides, in pertinent part:

On motion, and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time[.]

[¶ 10] "The granting of relief pursuant to that rule is a matter of the exercise of discretion by the trial court, and appellate review is limited to the question of whether the trial court abused its discretion." *State, Dept. of Family Services v. PAJ*, 934 P.2d 1257, 1259–60 (Wyo.1997). We will not disturb the exercise of that discretion unless shown by an appellant that the trial court "was clearly wrong." *Claassen v. Nord,* 756 P.2d 189, 193 (Wyo.1988).

"We recently clarified the definition of abuse of discretion when we said the core of our inquiry must reach 'the question of reasonableness of the choice made by the trial court.' *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998). 'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.' *Id.* (quoting *Byerly v. Madsen,* 41 Wash.App. 495, 704 P.2d 1236, 1238 (Wash.App.1985)); *Basolo* [*v. Basolo* ], 907 P.2d [348] at 353 [ (Wyo. 1995) ]. We must ask ourselves whether the district court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious."

*Cobb v. Cobb,* 2 P.3d 578, 579 (Wyo.2000) (*quoting Thomas v. Thomas,* 983 P.2d 717, 719 (Wyo.1999)).

---

1. Wyo. Stat. Ann. § 14–2–102(c) (Lexis 1999), in effect at the time, provided as follows:

... [A] man is presumed to be the natural father of a child born in Wyoming if, with the consent of the mother, he has acknowledged his paternity by signing an affidavit of paternity including his social security number and an acknowledgment of the privileges and obligations associated with parentage and filed these documents with the state office of vital records services. The consent of the mother shall include an affidavit with her social security number, stating that she was not married

at the time of conception or at the time of birth of the child. The father's acknowledgment shall include a statement of the right to withdraw the affidavit of paternity as provided by subsection (d) of this section on or before sixty (60) days of the signing of the affidavit of paternity, or by the date of a judicial proceeding relating to the child in which the signatory of the affidavit is a party, whichever occurs earlier. A minor's affidavit of paternity and acknowledgement shall also be signed by the legal guardian of the minor and include the social security number of the minor.

[¶ 11] The purpose of the rule "is to provide courts with the power to vacate judgments whenever such action is appropriate to accomplish justice." *U.S. Aviation, Inc. v. Wyoming Avionics, Inc.*, 664 P.2d 121, 127 (Wyo.1983). Nevertheless, the "rule is applicable only to special situations justifying extraordinary relief, and a showing of exceptional circumstances must be made." *Paul v. Paul*, 631 P.2d 1060, 1066 (Wyo. 1981).

## DISCUSSION

[¶ 12] The State's petition to establish paternity was filed in May 2000, at which time Wyoming's paternity determination statutes were located at Wyo. Stat. Ann. § 14–2–101 *et seq.* (LexisNexis 1999). Those statutes were repealed in 2003, however, and were replaced with the Wyoming Parentage Act now found at Wyo. Stat. Ann. § 14–2–401 *et seq.* (LexisNexis 2003). In ruling on the appellant's motion and petition, the district court relied on the latter statutes, even though proceedings commenced prior to July 1, 2003, "shall be governed by the law in effect at the time the proceeding was commenced." Wyo. Sess. Laws, ch. 93, § 4 (2003). *See also In re State, Div. of Child Support Enforcement, ex rel. NDB*, 2001 WY 118, ¶ 17, 35 P.3d 1224, 1229 n. 8 (Wyo.2001).[2] The State and the guardian-ad-litem concede this error by the district court, but contend that it was harmless because the same result would have attended application of the prior statutes. We need not address these contentions inasmuch as our resolution of the case is based upon the appellant's W.R.C.P. 60(b) motion for relief from judgment rather than upon his petition to declare the non-existence of paternity.

[¶ 13] The same can be said of the argument of the State and the guardian-ad-litem that the appellant's attempt to establish his non-paternity violates various statutory time limits and violates the doctrines of *res judicata*, collateral estoppel, and judicial estoppel. They contend that, although the appellant's petition was brought in the same civil action as the earlier proceedings, it is, in effect, a new action, because the stipulated judgment had become final as a matter of law. While that may be true as to the petition, the doctrines of *res judicata*, collateral estoppel, and judicial estoppel do not bar a motion for relief from judgment under W.R.C.P. 60(b). *PAJ*, 934 P.2d at 1260.

[¶ 14] In evaluating the district court's exercise of discretion under W.R.C.P. 60(b)(6), we must determine whether the facts of this case are a special situation justifying extraordinary relief. We believe they are. Consider: (1) the State's petition contained two false allegations of material fact—that the appellant is the biological father of the child and that no other person could be alleged to be the father; (2) the record does not indicate whether or how the appellant's rights to an informal hearing and to genetic testing were ever explained to him;[3] (3) the stipulated order that purports to act as a waiver of the appellant's rights specifies that "genetic testing is waived" due to the appellant having signed an affidavit acknowledging paternity, when in fact the appellant signed no such affidavit; (4) the appellant has a meritorious defense in that voluntary genetic testing established beyond any doubt that he is not the biological father of the child; (5) no disruption in the child's family life would

---

2. The district court's findings and conclusions included: (1) the appellant was an "adjudicated father" under Wyo. Stat. Ann. §§ 14–2–402(a)(ii), 14–2–815, and 14–2–822; (2) the appellant failed to file his petition within the two-year time limit found in Wyo. Stat. Ann. §§ 14–2–608 or 14–2–809; and (3) the appellant lacked standing under Wyo. Stat. Ann. § 14–2–802; the adjudication of paternity is binding upon the appellant under Wyo. Stat. Ann. § 14–2–823.

3. For a waiver to be valid, there must be " 'an intentional relinquishment or abandonment of a known right or privilege,' " and the waiver must be knowingly and intelligently made. *Nelson v. State*, 934 P.2d 1238, 1241 (Wyo.1997) (*quoting Van Riper v. State*, 882 P.2d 230, 234 (Wyo. 1994)). A defendant need not, however, know and understand every possible consequence of this waiver for it to be valid. *Solis v. State*, 851 P.2d 1296, 1299 (Wyo.1993). Whether a waiver was made voluntarily, knowingly, and intelligently depends upon the surrounding facts and circumstances. *Id.; Mapp v. State*, 953 P.2d 140, 144 (Wyo.1998).

*Daugherty v. State*, 2002 WY 52, ¶ 38, 44 P.3d 28, 40 (Wyo.2002).

result from granting the appellant's motion for relief from judgment because the appellant does not reside in the child's home and no father-child relationship has ever been established; and (6) the State's interest in obtaining support for the child will not be reduced inasmuch as the true biological father is known and subject to the district court's jurisdiction.

[¶ 15]   We find the facts of this case to be similar to those in *PAJ*, 934 P.2d at 1258–59, where we affirmed the district court's granting of a W.R.C.P. 60(b) motion.  In both cases, the State's petition alleging paternity was based on false information supplied by the mother, in both cases the petition was not initially contested by the appellant, and in both cases the appellant filed his motion within a reasonable time of becoming aware of the factual inaccuracies contained in the petition.  An alleged father's reliance on a mother's misrepresentations and his initial decision not to demand paternity testing do not necessarily demonstrate a lack of due diligence.  *Smith v. Department of Human Resources*, 226 Ga.App. 491, 487 S.E.2d 94, 96 (1997).

[¶ 16]   In her report to the district court, the guardian-ad-litem argued against the appellant's motion on the ground that "the child's best interest will be served by ongoing financial support and by ending litigation." In turn, the district court cited the guardian-ad-litem's report in its findings of fact and went on to state that "[t]he child's interests and public policy interests override equitable concerns forwarded by [the appellant]...." A similar theme is espoused by the State in its appellate brief, where it relies on *Whitt v. State ex rel. Wright*, 2001 WY 128, ¶ 23, 36 P.3d 617, 624 (Wyo.2001), for the proposition that there is "a strong public policy in favor of the recoupment of public assistance benefits."

[¶ 17]   We do not disagree that these public policies exist and are important.  But we disagree that, under the particular facts of this case, these policy concerns can best be addressed by disregarding the truth and by disregarding fairness.  In fact, given the ready availability of the child's biological father, it is difficult to imagine *any* justification for denying the appellant's motion.  The child's best interests are certainly better served by tying his future to his father rather than to a stranger.  Furthermore, there is an unsaid implication in these public policies that child support payments and public assistance recoupment should be from the parent of the child.

[¶ 18]   In suggesting that the "child can know who his biological father is even if that is not the man financially supporting him," the guardian-ad-litem opines that "[t]his does appear absurd, but in today's society these kinds of situations occur daily."  While it is certainly true that modern American society produces some non-traditional paternity determination situations that must be *handled* by the judicial system, we do not believe that such anomalies should be *created* by the judicial system where such a result can easily be avoided.  Similarly, although the "[c]ourts simply are not always capable of resolving the sorts of profound human dilemmas that are brought to their doorsteps," *NDB*, 2001 WY 118, ¶ 14, 35 P.3d at 1228, that does not mean the courts should sidestep such dilemmas where a ready solution is available, under existing rules of law, and where that solution is clearly in the best interests of the child.[4]

[¶ 19]   As a final comment, we emphasize that this case should not be construed to represent this Court's willingness willy-nilly to grant relief from paternity judgments whenever genetic testing proves that an error has occurred.  Rather, the particular combination of facts in this case, especially the absence of evidence that the appellant knowingly waived his right to genetic testing, and the lack of any prejudice to the child in granting relief from the judgment, have dictated the result.

## CONCLUSION

[¶ 20]   The State's petition to establish paternity contained material misstatements of

---

4.   We recently recognized the increasing need in paternity actions to give effect to the " 'weightier considerations of policy and logic....' " *GDK v. State, Dept. of Family Services*, 2004 WY 78, ¶¶ 9–19, 92 P.3d 834, 836–39 (Wyo.2004) (*quoting* Wyo. Stat. Ann. § 14–2–102 (LexisNexis 2001)).

fact and the appellant filed his motion for relief from judgment within a reasonable time after learning the truth. The record does not reveal that the appellant made a knowing waiver of his right to an informal hearing and to genetic testing, and the stipulated order confirming his alleged waiver was erroneous on its face. Furthermore, both justice and the best interests of the child will be fostered if the motion to set aside the paternity order is granted. Under the particular facts of this case, it was an abuse of discretion for the district court to deny the motion.

[¶ 21]   Reversed and remanded to the district court for further proceedings consistent herewith.