VOIGT, Chief Justice.
[11] This is an appeal from a Judgment and Order of Paternity in which the district court adjudicated the biological father of a child to be his legal father. We reverse because the mother's former husband had already been determined to be, and remained, the child's legal father.
ISSUE
[T2] Under the circumstances of this case, did the divoree between NJM and MDG *995 disestablish MDG's status as NSM's legal father? [1]
FACTS
[13] NJM gave birth to NSM on December 1, 1996, at a time that NJM was unmarried. No father was listed on NSM's birth certificate. On January 8, 1998, NJM married MDG. NJM and NSM lived with MDG, and MDG held himself out to be NSM's father. In addition, NJM wrote to Wyoming Vital Records Services on January 7, 1999, imparting the following information:
This letter is regarding my sons birth certificate, the father and myself was not married at the time of the birth so his name was not placed on the certificate, and the child did not receive his fathers last name. I would like to do this now.
The child's full name as it appears on the birth certificate is as follows.
1. [NSM]
2. Birth date December 1, 1996
3. Birth place. Powell Hospital, Powell WY. Park County.
I would like to change his last name on the certificate so his name reads as follows.
1. [NSG].
Here is the fathers name and the place of marriage.
1. [MDG].
2. Birth date, May 12, 1963
3. Birth place, Powell WY. Park County
4. -We were married on January 9, 1998
_ 5. We were married in Powell WY., Park County
(Quoted verbatim; emphasis added.)
[14] Following this letter, NJM and MDG each obtained from Wyoming's Vital Records Services, and each executed and filed, a document entitled "State of Wyoming Affidavit Acknowledging Paternity and Statement Determining Child's Surname." In his affidavit, MDG recited that, "I hereby acknowledge that I am the natural father of the child named above, and request that my name be entered on the birth certificate as the father of this child." (Emphasis added.) Both NJM and MDG acknowledged receipt of "written and oral notice of the legal rights and consequences resulting from" the affidavit. The form affidavit contained, inter alia, the following "warnings":
1. The purpose of the form is to establish legal paternity when the parents of a child are not married.
2. Either parent may be court ordered to pay child support for the child.
8. A correctly completed affidavit has the same effect as a court order establishing paternity.
4. Either party may bring a court order to rescind the affidavit within sixty days of the date it is signed, but thereafter the affidavit may be challenged in very limited circumstances.
Upon the filing of these affidavits, NSM's birth certificate was amended to reflect MDG as his father, and to change his name to NSG.
[15] MDG, NJM, and NSM lived together as a family until NJM filed for divorce on January 16, 2002. In her divorcee Complaint, NJM averred that MDG was NSM's "presumed" father under Wyo. Stat. Ann. § 14-2-102(a)(iv) (LexisNexis 2001) because MDG had received NSM into his home and openly held him out as his natural child, but did not mention the affidavits that had been signed and filed by MDG and NJM. On August 29, 2002, however, the parties entered into a Stipulation and Property Settlement Agreement that stated, to the contrary, as follows:
3. As stated above, [NJM] admits that [MDG] is not the father of [NSM] even though he is designated as the child's father on [NSM's] Birth Certificate issued by Vital Records Services, Department of Health and Medical Services State of Wyoming. Both parties acknowledge that [NSM's] original Birth Certificate is incorrect and [MDG's] name needs to be re *996 moved as [NSM's] father from the original Birth Certificate and a new Birth Certificate filed leaving the name of [NSM's)] father blank. [NJM] and [MDG] agree to cooperate and sign whatever documents are necessary in order to make this change on [MSN's] Birth Certificate. [NJM] shall be responsible for preparation of all necessary documents to obtain a new birth certificate and for all associated costs. Additionally, as [MDG] is not the natural or presumed father of [NSM], [MDG] is not responsible for any support of [NSM].
(Emphasis added.)
[T6] This Stipulation and Property Settlement Agreement was incorporated into a Judgment and Decree of Divorcee that was filed on October 21, 2002. The decree contained the following as one of its findings:
4. Even though [NJM] alleged in her Complaint that the parties had one minor child, [NSM], born December 1, 1996, she now admits that [MDG] is neither the natural or presumed father of the child. Before the parties marriage [NSM] was known as [NSM] and his surname of [M] should now be restored.
Based upon that finding, the court ordered as follows:
3. The Birth Certificate filed for [NSM], born December 1, 1996, is incorrect and [MDG's] name needs to be removed as the child's father from the Birth Certificate previously issued by the Vital Records Services, Department of Health and Medical Services State of Wyoming. A new Birth Certificate for [NSM] shall then be filed leaving the name of his father blank. The new Birth Certificate shall also reflect that the child's surname will again be [M] and after this Decree is entered, the child shall be known as [NSM].
[17] Consistent with that decree, the State of Wyoming issued [NSM] a new birth certificate on November 22, 2002, with no one named as father. Within four months, NJM had applied for assistance, and the State of Wyoming filed a Petition to Establish Paternity and Support, naming DNW as NSM's father. Genetic testing proved that DNW was, indeed, NSM's biological father. In the paternity action, the State, DNW, and NJM all stipulated that DNW and NJM had had a "one night's stand," that resulted in NJM's pregnancy, that DNW had never been told of NSM's birth, that DNW had never had any relationship or interaction with NSM, and that NSM had not known that DNW, rather than MDG, was his biological father. DNW contested the paternity action based on both the statutory affidavit of paternity and the statutory presumption of paternity resulting from MDGs living with and holding out NSM to be his child. The district court ruled against DNW, primarily upon its reading of GDK v. State, Dep't of Family Services, 2004 WY 78, 92 P.3d 834 (Wyo.2004), and that case's emphasis upon genetic testing and the best interest of the child.
STANDARD OF REVIEW
[T8] The facts of this case are not in dispute. The question before the Court is fundamentally a question of statutory construction, which is a question of law reviewed de novo. Hoke v. Motel 6 Jackson, 2006 WY 38, ¶6, 131 P.3d 369, 373 (Wyo.2006). Where, as here, the statute at issue is unambiguous, we ascertain legislative intent by giving effect to the plain and ordinary meaning of the words used. Id.
Wyo. Stat. Ann. § 14-2-102 (LexisNexis 2001)
[19] The State filed this paternity action on March 7, 2008. The Wyoming Parentage Act was amended in 2003, with the proviso that actions commenced before July 1, 2008 were to be governed by the law in effect at the time proceedings were commenced. 2003 Wyo. Sess. Laws 230. The pertinent statute in effect at that time was Wyo. Stat. Ann. § 14-2-102 (LexisNexis 2001), the full text of which is as follows, with emphasis added as appropriate:
(a) A man is presumed to be the natural father of a child if:
(i) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within three hundred (800) days after the marriage is terminated by *997 death, annulment or divorce or after a decree of separation is entered by a court; or j
Gi) Before the child's birth, he and the child's natural mother attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and:
(A) If the attempted marriage could be declared invalid only by a court, the child is born during the attempted marriage or within three hundred (800) days after its termination by death, annulment or divoree; or
(B) If the attempted marriage is invalid without a court order, the child is born within three hundred (800) days after the termination of cohabitation; or
(i) After the child's birth, he and the child's natural mother married or attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid and he is obligated to support the child under a written voluntary promise or by court order; or
(iv) While the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child.
(b) A presumption under subsection (a) of this section may be rebutted in an appropriate action only by clear and convincing evidence. If two (2) or more presumptions under subsection (a) of this section arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. A presumption under subsection (a) of this section is rebutted by a court decree establishing paternity of the child by another man or, after the court finds by clear and convincing evidence that the child was not born of the marriage, by a divorce decree expressly declaring the child was not born of the marriage.
(c) A man is considered the natural fo-ther of a child born in Wyoming if, with the consent of the mother, he has acknowledged his paternity by signing an affidavit of paternity including his social security number and an acknowledgment of the privileges and obligations associated with parentage and filed these documents with the state office of vital records. The consent of the mother shall include an affidavit with her social security number, stating that she was not married at the time of conception or at the time of birth of the child. The father's affidavit shall include a statement of the right to withdraw the affidavit of paternity as provided by subsection (d) of this section on or before sixty (60) days of the signing of the affidavit of paternity, or by the date of a judicial proceeding relating to the child in which the signatory of the affidavit is a party, whichever occurs earlier. A minor parent's affidavit of paternity and acknowledgment shall also be signed by a legal guardian of the minor parent and include the social security number of the minor.
(d) A withdrawal of an affidavit of paternity under subsection (c) of this seetion shall be made by affidavit of at least one (1) signatory of the affidavit of paternity, or if the parent is a minor, the minor parent and a legal guardian of the minor parent, filed with the state office of vital records and is valid only if filed on or before sixty (60) days from the date the affidavit of paternity was signed, or by the date of a judicial proceeding relating to the child in which the signatory of the affidavit is a party, whichever occurs earlier. Within ten (10) days after receipt, the office of vital records will provide notice of the withdrawal to any non-withdrawing party at the address supplied on the child's birth certificate.
(e) An acknowledgment by affidavit under subsection (c) of this section is final, and paternity shall be deemed conclusive, unless the affidavit is withdrawn as provided by subsection (d) of this section or the signatory of the affidavit proves that the signed affidavit of paternity was obtained as a result of fraud, duress or material mistake of fact. The legal responsibilities arising from the *998 signed affidavit of paternity, including child support obligations, shall not be suspended - during any challenge under this subsection, except for good cause shown. (£) Every hospital, health care facility, birthing center or other medical assistance facility located in the state shall provide to any person who holds himself out to be the natural parent of a child born out of wedlock in the state an affidavit of paternity pursuant to subsection (c) of this section. The facility providing the affidavit shall forward the completed affidavit to the state office of vital records. Upon request, the state office of vital records shall provide blank affidavits of paternity to any facility making such request under this subsection.
DISCUSSION
[T10] Although MDG may be presumed to be NSM's natural father under subsection (a)(iv) quoted above, we need not analyze that presumption or that subsection because the unambiguous provisions of subsections (c), (d) and (e) dictate the result in this case.[2] MDG signed and filed an affidavit of paternity pursuant to subsection (c), acknowledging that he is NSM's father. That affidavit was not timely withdrawn, and MDG never even attempted to prove that it was obtained as a result of fraud, duress or material mistake of fact. His paternity of NSM is, therefore, final and conclusive. When the State and the district court learned of the existence of MDGs and NJM's affidavits, this paternity action against DNW should have been dismissed. The provision of the earlier divorcee decree purporting to disestablish MDG's paternity of NSM was beyond the court's statutory authority and was, therefore, void. In re TRG, 665 P.2d 491, 498 (Wyo.1983); 46 Am.Jur.2d Judgments §§ 20, 29 (2006). MDG was, and is, NSM's father, and the State had no right of action against DNW.[3]
CONCLUSION
[111] The unambiguous intent of Wyo. Stat. Ann. § 14-2-102(e) (LexisNexis 2001), as applied to the facts of this case, was to give final and conclusive effect to MDGs paternity of NSM, as declared in the statutory affidavits of MDG and NJM. To allow the bald assertions of a subsequent divorce settlement agreement to set aside that conclusive effect would be directly contrary to clear legislative intent.
[112] The Order and Judgment of Paternity is reversed and this matter is remanded to the district court for entry of an order of dismissal.

. The heading of this case, as well as the use of "NSM" to identify the child is misleading, inasmuch as his legal name throughout the marriage of NJM and MDG, and prior to it being changed unlawfully, was "NSG." To avoid confusion, we will refer to the child throughout this opinion as NSM.

. The fact that we are not dealing with conflicting presumptions under subsection (a) also makes irrelevant most of the cases cited by the parties in their briefs.

. Although genetic testing is a powerful weapon in the State's arsenal as it seeks to enforce child support obligations, it is not the right answer in every case. Rather, the particular facts of each case, judged under the applicable statutes, must dictate the result,. MAM v. State Dep't of Family Servs., 2004 WY 127, ¶19, 99 P.3d 982, 986 (Wyo.2004).