# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 117

**APRIL TERM, A.D. 2020**

**September 10, 2020**

IN THE MATTER OF THE PATERNITY
OF: AAAE, a minor child,

TE,

Appellant
(Petitioner),

v.                                                          S-20-0006

STATE OF WYOMING, DEPARTMENT
OF FAMILY SERVICES,

Appellee
(Respondent).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*

Deborah L. Roden and Mary Katherine "Katye" Brown, Woodhouse Roden Nethercott, LLC, Cheyenne, Wyoming. Argument by Ms. Brown.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Misha Westby, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General. Argument by Ms. Kucera.

*Guardians ad Litem:*

Dan S. Wilde, Deputy State Public Defender; Joseph R. Belcher, Chief Trial and Appellate Counsel, Wyoming Guardian ad Litem Program, a division of the Office of the State Public Defender. Appearance by Mr. Belcher.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    TE filed a Petition to Establish Paternity of AAAE (AE).  The district court granted TE's request for genetic testing, and the results confirmed that he is the child's biological father.  The district court issued an order adjudicating paternity, and the Department of Family Services (the Department) objected.  The district court vacated the order and set the case for trial.  After trial, the district court concluded TE had not timely filed his Petition to Establish Paternity and denied the petition.  TE appealed.  We reverse.

## ISSUES

[¶2]    We address the following issues:

1. Could the Department of Family Services challenge the district court's order adjudicating TE's paternity?

2. Does Wyo. Stat. Ann. § 14-2-817 afford the district court discretion to deny a petition to establish paternity after ordering genetic testing, the results of which rebuttably establish paternity?

## FACTS

[¶3]    While married to JCM, FCM was involved in a romantic relationship with TE.  She was still married to JCM when she gave birth to AE in November 2013, making JCM AE's presumed father.  Wyo. Stat. Ann. § 14-2-705.  TE was present at AE's birth, but he was not listed as the father on the birth certificate, and he did not sign any paternity paperwork at the hospital.  After AE was born, TE purchased an at-home paternity test from Walgreens.  The results disclosed a 99.99% probability that TE was the child's biological father.  At that time, TE did not act to establish paternity.  TE and FCM started living together before AE's birth and continued to do so until July 2014 when AE was eight months old.  In July 2014, TE was incarcerated.  He remained incarcerated until February 2015 and then lived in a halfway house from February to September 2015.

[¶4]    In December 2015, the Department took protective custody of AE and her brother.  Ultimately, the Department sought to terminate the rights of the parents of both children.  The Petition for Termination of Parental Rights, as it pertained to AE, named FCM as the natural mother, JCM as the presumed father, and TE as the alleged father.  In May 2017, both FCM and JCM voluntarily relinquished their parental rights to AE.

[¶5]    TE responded to the Department's petition and denied its allegations.  In August 2017, TE filed a Motion for Judgment on Pleadings Pursuant to W.R.C.P. 12(c) and

1

12(b)(6) or in the Alternative Motion to Stay Proceeding Pending Establishment of Paternity. TE argued that the termination proceeding should be dismissed as it pertained to his rights. In support of his argument, he asserted that the Department could not terminate his parental rights because he did not have any legally established rights. TE alternatively requested a stay to allow time for him to establish parentage and assert parental rights. The Department did not object to TE's dismissal from the termination action but argued that he should be precluded from asserting any rights to AE. TE was not dismissed from the termination action.

[¶6] In September 2017, TE filed a Petition to Establish Paternity in the termination case. The Department moved to strike the petition, arguing that it should not have been filed in the termination action asserting, *inter alia*, that the Department was not an appropriate party to the paternity action.[1] While this motion was pending, TE filed a Petition to Establish Paternity in a new docket, naming FCM as the sole respondent. In an "abundance of caution," he served FCM, JCM and the Department. Only the Department filed an answer. In March 2018, the district court joined the paternity and termination actions, adding the paternity case to the termination docket.[2]

[¶7] TE filed a Motion for Order for Genetic Testing and an accompanying affidavit. The Department objected, arguing it would be inequitable to disprove the father-child relationship between AE and JCM; TE did not bring the paternity action within a reasonable time; and JCM should be estopped from denying parentage.[3] In response, TE argued that JCM had executed an irrevocable relinquishment of parental rights and was supportive of TE's efforts to establish paternity. He also claimed JCM's conduct did not estop JCM from denying presumptive parentage. TE argued that it was not inequitable for him to move forward with his paternity action because AE had no legal parents, he had a relationship with her, and establishing his paternity would provide her with a legal and biological parent. Finally, he argued he brought his paternity action within a reasonable time and within the five-year statutory timeline.

[¶8] After a hearing, the district court generally agreed with TE. The court concluded that it would "not be inequitable to allow genetic testing . . . both presumed parents executed relinquishments of parental rights and as such there can be no inequity to either

---

[1] The Department asserted FCM and JCM were necessary parties to a paternity action and were no longer parties to the termination. It argued confusion would result regarding the parties' roles as "petitioner" (TE, in the paternity action, and the Department, in the termination action). The Department declared it should not have to pay TE's fees in the paternity action, but was required to do so in the termination action. Finally, it argued that because termination actions are not confidential, but paternity actions are, the paternity action could not be filed in the termination action.

[2] The district court also denied the Department's motion to strike TE's Petition to Establish Paternity in the termination case, concluding the motion was moot.

[3] *See* Wyo. Stat. Ann. § 14-2-808, *supra* ¶¶ 18–19.

presumed parent in [proving] a paternal relationship between the alleged father and child." The court also found that the presumed father's relinquishment "render[ed] many of [the statutory] factors [regarding the child's best interests] inapplicable to this case." *See infra* ¶ 18. It recognized that TE had "not all together foregone the chance at a relationship with [AE]" and that he alleges he "maintains consistent visitation with [AE] . . . [and has] made some belated attempts, though unsuccessful, to establish a legal relationship with [AE] . . . [and AE] is still relatively young, knows [TE], and the potential for establishing a father-child relationship still exists." The court then concluded, "the time frame in which [TE] asserted his parentage is reasonable under the circumstances." The court granted TE's motion and required the Department to cover the cost of testing.

[¶9] Genetic testing was conducted and disclosed a 99.99% probability of paternity and a combined paternity index of 1,211,096,210 to 1. TE filed a Motion for Order Adjudicating Parentage. The district court granted the motion and entered an Order Adjudicating Parentage. After the order was entered, the Department filed a response raising the same arguments it had previously made against TE's motion for genetic testing. *See supra* ¶ 7.

[¶10] The district court vacated its Order Adjudicating Parentage, stating "Despite the various assertions in the pleadings to date, no evidence has been presented on the issue of parentage. . . . The question of parentage is, and should remain, a question for the trier of fact." The district court held a trial, and at its conclusion, found the petition was not filed in a reasonable time under statutes for *establishment of paternity* or for *disestablishment of paternity*. The court denied TE's Petition to Establish Paternity. TE timely appealed.

## *DISCUSSION*

### I.      *Could the Department of Family Services challenge the district court's order adjudicating TE's paternity?*

[¶11] TE asserts that the Department lacks standing to contest his Petition to Establish Paternity. The Department argues that it has standing because the Wyoming Parentage Act does not exclude it as a party, and it is a real party in interest.

[¶12] We do not address the Department's argument because it has a more fundamental standing problem—it was not a party to the paternity action: the Department was not named as a party in TE's Petition to Establish Paternity and it did not seek to intervene in the action. In fact, when TE initially sought to add his paternity claim to the termination

3

proceedings, the Department argued it was not a proper party and TE must bring his claims in a separate suit.[4]  He did so.

[¶13]  The Department had no right to participate in the paternity action.  A nonparty does not have standing as a litigant in a lawsuit.  *See Matter of Adoption of JLP*, 774 P.2d 624, 627 (Wyo. 1989) ("If appellant's parental rights were properly terminated, and we herein determine they were, then appellant was a stranger to the subsequent adoption proceeding and had no right to object to or participate in that proceeding."); *YHT & Assocs., Inc. v. Nationstar Mortg. LLC*, 177 So. 3d 641, 643 (Fla. Dist. Ct. App. 2015) ("[A]lthough YHT had the opportunity to challenge the trial court's denial of its motion to intervene, YHT failed to do so, leaving it as a nonparty to the proceedings below and thus without standing to appeal to this court."); *Edmunds v. Edmunds*, 669 S.E.2d 874, 878 (N.C. Ct. App. 2008), *aff'd*, 686 S.E.2d 150 (N.C. 2009) ("In general, only a party or his legal representative has standing to request that an order be set aside under Rule 60(b); a stranger to the action may not request such relief." (citation omitted)).

[¶14]  The Department maintains it has standing by virtue of the joinder of the paternity and termination actions under Wyo. Stat. Ann. § 14-2-810.[5]  The Department argues TE "cannot join his action to an action where the Department is the petitioner and then claim the Department cannot be a party to the joined action."  There is a distinction between the joinder of actions under W.R.C.P. 18 and the joinder of parties under W.R.C.P. 19.

---

[4] We would be remiss if we failed to remark on the Department's troubling actions in this matter.  After naming TE as a party to the termination proceeding, it first attempted to thwart his efforts to establish paternity by arguing it could not be a party to his paternity suit.  It then unsuccessfully challenged his request for genetic testing.  When genetic testing established he was the biological father, the Department, in contravention of its earlier position, challenged his paternity.  It successfully argued that the district court should vacate its order adjudicating parentage.  We have difficulty reconciling these actions with the Department's charge to protect both children and families.  *See* Wyo. Stat. Ann. § 14-3-201.

> While it is certainly true that modern American society produces some non-traditional paternity determination situations that must be **handled** by the . . . system, we do not believe that such anomalies should be **created** by the . . . system where such a result can easily be avoided.

*MAM v. State Dep't of Family Servs.*, 2004 WY 127, ¶ 18, 99 P.3d 982, 986 (Wyo. 2004).

[5]  **§ 14-2-810.  Joinder of proceedings.**
> (a) Except as otherwise provided in subsection (b) of this section, a proceeding to adjudicate parentage may be joined with a proceeding for adoption, termination of parental rights, child custody or visitation, child support, divorce, annulment, legal separation or separate maintenance, probate or administration of an estate or other appropriate proceeding.
> (b) A respondent may not join a proceeding described in subsection (a) of this section with a proceeding to adjudicate parentage brought under the Uniform Interstate Family Support Act.

Wyo. Stat. Ann. § 14-2-810(a)–(b) (LexisNexis 2019).

4

[The] joinder of causes of action in federal practice has its source in Rule 18(a) . . . which permits and encourages the practice but does not compel it. This optional nature, coupled with the unilateralness of its right of exercise, could hardly soundly, without some unmistakable indication, be regarded as intended to affect in any substantive respect the rights of an adverse party as they would exist without the joinder. In other words, the Rule simply affords a vehicle for convenience, facilitation and economy in litigation procedurally, and it does not have as its object to put it within the power of one party or the court thereby to produce a substantive impingement upon any right or liability.

6A Charles A. Wright et al., *Federal Practice and Procedure* § 1582, at 698–99 (3d ed. 2010); *see also* 16 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 232:18, at 232–33 (3d ed. 2000) ("[W]hen two or more cases are joined for trial, the actions remain separate and distinct with the rights of the parties being determined within the separate and distinct action."); 1A C.J.S. *Actions* § 181, at 480 (2016) ("Statutory authorization to unite particular causes of action subtracts nothing from the rights previously possessed under either separate cause, their independent characteristics being retained."). The joinder of the proceedings did not change the Department's status as a nonparty in the paternity action. The Department was not and is not a party to that action and could not properly challenge the order adjudicating TE's paternity.

## II. Does Wyo. Stat. Ann. § 14-2-817 afford the district court discretion to deny a petition to establish paternity after ordering genetic testing, the results of which rebuttably establish paternity?

[¶15] TE argues that the district court lacked the discretion to adjudicate parentage after it was presented with court-ordered genetic testing results that complied with the statutes and indicated he was AE's biological father.

## A. Standard of Review

[¶16] This issue presents a question of statutory construction, which is a question of law reviewed de novo. *DNW v. State, Dep't of Family Servs.*, 2007 WY 54, ¶ 8, 154 P.3d 990, 992 (Wyo. 2007).

"When we interpret statutes, our goal is to give effect to the intent of the legislature . . . 'based primarily on the plain and ordinary meaning of the words used in the statute.'" *Fugle v. Sublette County School Dist. No. 9*, 2015 WY 98, ¶ 8, 353 P.3d 732, 734 (Wyo.

5

2015) (quoting *Krenning v. Heart Mountain Irrigation Dist.*, 2009 WY 11, ¶ 9, 200 P.3d 774, 778 (Wyo. 2009)). "Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.'" *Adekale v. State*, 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015) (quoting *Rodriguez v. Casey*, 2002 WY 111, ¶ 20, 50 P.3d 323, 329 (Wyo. 2002)).

> We therefore construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection. To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously. We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence. When the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction.

*PacifiCorp, Inc. v. Wyo. Dep't of Revenue*, 2017 WY 106, ¶ 10, 401 P.3d 905, 908–09 (Wyo. 2017) (quoting *Nicodemus v. Lampert*, 2014 WY 135, ¶ 13, 336 P.3d 671, 674 (Wyo. 2014)).

*Sullivan* [*v. State*, 2019 WY 71], ¶ 10, 444 P.3d [1257,] 1259–60 [(Wyo. 2019)] (quoting *Wyo. Jet Center, LLC v. Jackson Hole Airport Bd.*, 2019 WY 6, ¶ 12, 432 P.3d 910, 915 (Wyo. 2019)).

*Lozano v. Circuit Court of Sixth Judicial Dist.*, 2020 WY 44, ¶ 15, 460 P.3d 721, 728 (Wyo. 2020).

**B.    Analysis**

[¶17] The Wyoming Parentage Act delineates the only methods available to establish paternity in Wyoming. Where a child has a presumed father, Wyo. Stat. Ann. § 14-2-807 limits the time to initiate a paternity proceeding: "a proceeding . . . to adjudicate the parentage of a child having a presumed father shall be commenced within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five (5) years after the child's birth." Wyo. Stat. Ann. § 14-2-807(a) (LexisNexis 2019). A party seeking to adjudicate paternity may ask for an order requiring genetic testing. Wyo. Stat. Ann. § 14-2-702.[6]

[¶18] Before entering an order for genetic testing, the court must "consider the best interest of the child" including:

> (i) The length of time between the proceeding to adjudicate parentage and the time that the presumed or acknowledged father was placed on notice that he might not be the genetic father;

> (ii) The length of time during which the presumed or acknowledged father has assumed the role of father of the child;

> (iii) The facts surrounding the presumed or acknowledged father's discovery of his possible nonpaternity;

> (iv) The nature of the relationship between the child and the presumed or acknowledged father;

> (v) The age of the child;

> (vi) The harm that may result to the child if presumed or acknowledged paternity is successfully disproved;

---

[6] Wyo. Stat. Ann. § 14-2-702 provides:
> (a) Except as otherwise provided in this article and article 8 of this act, the court shall order the child and other designated individuals to submit to genetic testing if the request for testing is supported by the sworn statement of a party to the proceeding:
>> (i) Alleging paternity and stating facts establishing a reasonable probability of the requisite sexual contact between the individuals
>> . . . .

Wyo. Stat. Ann. § 14-2-702(a)(i).

(vii) The nature of the relationship between the child and any alleged father;

(viii) The extent to which the passage of time reduces the chances of establishing the paternity of another man and a child support obligation in favor of the child; and

(ix) Other factors that may affect the equities arising from the disruption of the father-child relationship between the child and the presumed or acknowledged father or the chance of other harm to the child.

Wyo. Stat. Ann. § 14-2-808(b)(i)–(ix) (LexisNexis 2019).

[¶19]   A court may refuse to order genetic testing if it determines:

(i)   The conduct of the mother or the presumed or acknowledged father estops that party from denying parentage; and

(ii)   It would be inequitable to disprove the father-child relationship between the child and the presumed or acknowledged father.

Wyo. Stat. Ann. § 14-2-808(a)(i)–(ii).   If the child has a presumed father and the court denies a motion for genetic testing, the statute requires the court to "issue an order adjudicating the presumed father to be the father of the child."   Wyo. Stat. Ann. § 14-2-808(e).   If the court orders genetic testing and the man being tested has at least a 99% probability of paternity and a combined paternity index of at least one hundred to one, the court is required to adjudicate that man as the father.   Wyo. Stat. Ann. § 14-2-705.

(a)   **The court shall apply the following rules** to adjudicate the paternity of a child:

(i) The paternity of a child having a presumed, acknowledged or adjudicated father may be disproved only by admissible results of genetic testing excluding that man as the father of the child or identifying another man as the father of the child;

(ii)   Unless the results of genetic testing are admitted to rebut other results of genetic testing, **a man identified**

8

**as the father of a child under W.S. 14-2-705 shall be
adjudicated the father of the child**;[7]

Wyo. Stat. Ann. § 14-2-817(a)(i)–(ii) (emphasis added).

[¶20]   "[W]e have repeatedly found the word 'shall' in a statute to be mandatory." *In Interest of ECH*, 2018 WY 83, ¶ 25, 423 P.3d 295, 303 (Wyo. 2018) (quoting *In re MN*, 2007 WY 189, ¶ 5, 171 P.3d 1077, 1080 (Wyo. 2007)).   Wyo. Stat. Ann. § 14-2-817 requires that a man identified by genetic testing as the father "shall be" adjudicated the father.   The statute leaves no discretion once the test is ordered and positive results are returned.

[¶21]   Here, as required, the district court analyzed AE's best interests.   *See supra* ¶ 8.   It determined "the time frame in which [TE] asserted his parentage is reasonable under the circumstances" and ordered genetic testing.   The results indicated a 99.99% probability of TE's paternity.   Those results were filed with the court.   The Act, then, required that TE be adjudicated as AE's father and the district court entered its Order Adjudicating Parentage on August 2, 2019.

[¶22]   The district court later found the order had been "improvidently granted," vacated the order, and held a trial on the question of parentage.   Following trial, it found that the Petition to Establish Paternity was not filed in a timely manner and denied the petition.[8] While the district court has discretion to determine the timeliness of a paternity petition *before* ordering testing, *see* Wyo. Stat. Ann. § 14-2-807, the statutes do not afford the district court discretion on the timeliness of a petition *after* ordering genetic testing.

---

[7] Wyo. Stat. Ann. § 14-2-705 provides:
> (a)  Under this act, a man is rebuttably identified as the father of a child if the genetic testing complies with this article and the results disclose that:
> > (i)  The man has at least a ninety-nine percent (99%) probability of paternity, using a prior probability of one-half (1/2), as calculated by using the combined paternity index obtained in the testing; and
> > (ii)  A combined paternity index of at least one hundred (100) to one (1).

Wyo. Stat. Ann. § 14-2-705(a)(i)–(ii).

[8] The district court alternatively reasoned that this was not an action to establish paternity but was instead an action to disestablish paternity, governed by Wyo. Stat. Ann. § 14-2-823(f).   That statute provides a two-year statute of limitations for disestablishing paternity.   Wyo. Stat. Ann. § 14-2-823(f)(ii).   Applying the two-year statute of limitations, the court concluded that TE failed to bring the action in a timely manner.   A disestablishment "petition shall be filed only by the mother of the child, the adjudicated father of the child, the child, if the child was a party to the adjudication, or the legal representative of any of these parties."   Wyo. Stat. Ann. § 14-2-823(f)(iii).   TE is not one of these parties.   This is an establishment action, which TE properly brought pursuant Wyo. Stat. Ann. § 14-2-807.   The district court erred to the extent it relied upon the disestablishment statute of limitations.

9

## *CONCLUSION*

[¶23] The Department of Family Services was not a party to the paternity action. Wyoming Statute Annotated § 14-2-817 does not afford the juvenile court discretion to deny a petition to establish paternity after ordering genetic testing pursuant to Wyo. Stat. Ann. § 14-2-702, the results of which meet the threshold established by Wyo. Stat. Ann. § 14-2-705(a).

[¶24]  We reverse and remand for an order adjudicating TE as AE's father.