# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 42

OCTOBER TERM, A.D. 2013

*March 31, 2014*

ROBERT C. CARSON,

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel.,
WYOMING WORKERS' SAFETY AND
COMPENSATION DIVISION,

Appellee
(Respondent).

S-13-0144

*Appeal from the District Court of Teton County*
*The Honorable Timothy C. Day, Judge*

*Representing Appellant:*
    Katherine L. Mead of Mead & Mead, Jackson, WY

*Representing Appellee:*
    Peter K. Michael, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; Michael J. Finn; Senior Assistant Attorney General; and John A. Brodie, Assistant Attorney General

*Before KITE, C.J., and HILL, VOIGT\*, BURKE, and DAVIS, JJ.*

*\*Justice Voigt retired effective January 3, 2014.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]   On January 19, 2006, Robert Carson and his passenger Hugh Sharp were involved in a serious car accident in Snake River Canyon.  Carson sustained multiple injuries, including a severe head injury, and Sharp was killed in the accident.  In 2007 the Wyoming Workers' Safety and Compensation Division (Division) denied Carson's claims for worker's compensation benefits because he failed to show that the injuries he sustained in the automobile accident arose out of and in the course of his employment with Metrocities Mortgage, LLC (Metrocities).  After a contested case hearing, the Division's denial of benefits was upheld.  Carson did not appeal this determination.

[¶2]   Eight months after the Office of Administrative Hearings (OAH) denied Carson's claim for worker's compensation benefits, a jury sitting in a federal district court case brought by Hugh Sharp's widow against Carson for wrongful death found that Carson was acting within the course and scope of his employment at the time of the accident. After the federal district court jury verdict, Carson sought to reopen this case contending there was newly discovered evidence to support that he was acting within the course of his employment at the time of the accident.  After rulings by the district court and this Court, the OAH eventually affirmed its earlier decision from 2008 that Carson was not acting within the course of his employment.  We will affirm.

**ISSUE**

[¶3]   Carson presents one issue for our review:

> As a matter of law, did the OAH commit error when it failed to apply collateral estoppel to the issue of whether Robert Carson was in the course and scope of employment at the time of his injury?

**FACTS**

[¶4]   On January 19, 2006, Robert Carson and his passenger Hugh Sharp were involved in a serious car accident in Snake River Canyon.  Carson sustained multiple injuries including a severe head injury and was in a coma for one month.  Sharp was killed in the accident.

[¶5]   Originally this matter began as a worker's compensation claim filed on behalf of Robert Carson by his wife, Rachel Carson.  Rachel filed a claim in which the theory was that the car accident occurred while he was in the course of his employment with Metrocities.  The claim elaborated that Robert was traveling from his home in Alpine to Jackson to discuss a mortgage with Shane Gunderson and Trish Reynolds.  The Division

1

issued a final determination denying benefits.[1]  A contested case hearing was held on June 28, 2007, after which the OAH found that claimant had not met his burden to prove he was acting within the course of his employment at the time of the accident.  No appeal was taken from this decision.

[¶6]    In the meantime, Sharp's widow filed a wrongful death action in federal district court against Carson and Metrocities.  After a trial, a federal jury found that at the time of the accident Carson was acting within the course and scope of his employment with Metrocities and thus a judgment was entered against Metrocities under the theory of *respondeat superior* and in favor of Sharp's widow.

[¶7]    On the basis of the federal judgment, in September of 2008 Carson submitted a *Motion to Reopen Claim* to the OAH.  Carson based his motion on W.R.C.P. 60(b) and contended that there was newly discovered evidence that he was indeed acting within the course of his employment at the time of the accident.  Carson specifically relied upon federal court testimony from Trish Reynolds who testified that she was scheduled to meet Carson in Jackson on the day of the accident.  Without a hearing the OAH denied Carson's motion on October 29, 2008.

[¶8]    Carson appealed to the district court.  There, the court granted Carson's motion to supplement the record with (1) deposition testimony from Trish Reynolds; (2) federal trial testimony from two Metrocities employees; and (3) an agreement between Metrocities and Salt River Financial (which also employed Carson).  The court also reversed the OAH's decision denying Carson's motion and directed the OAH to reopen Carson's claim.

[¶9]    In response, the Division appealed to this Court.  In *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Carson*, 2011 WY 61, 252 P.3d 929 (Wyo. 2011) (*Carson I*), we concluded that the district court properly granted supplementation of the record but that the district court erred by ruling on the merits of Carson's motion to reopen rather than remanding the case to the OAH for that body to consider the motion in light of the supplemented record.

[¶10]  Based upon this Court's decision and its remand to the OAH, the parties agreed that the OAH should decide the matter without further hearing.  After due consideration, the OAH again denied Carson relief and affirmed its original September 27, 2007 order denying benefits.  The OAH wrote:

> 48. A review of the foregoing supplemental materials
> does not change the decision in this case.  Again, even with
> the supplemental materials, the only offered evidence of a

---

[1]  Initially, Metrocities objected to the Division's denial, but later it opposed the claim altogether.

causal connection between Carson's trip to Jackson on January 19, 2006, and his employment with Metrocities was the testimony of Gunderson and Reynolds that an appointment had been arranged in Jackson to discuss a refinance. The other suggestion that he may have been distributing or picking up marketing materials is simply speculation.

49. The testimony of Reynolds and Gunderson is not deemed persuasive because,

a. their testimony is not consistent. As set forth above Gunderson testified that Reynolds was instrumental in setting up the meeting. Reynolds states it was all Gunderson's doings.

b. their testimony is not supported by any documentation. Gunderson and Reynolds' testimony that they had not filled out a loan application was not disputed and therefore evidence of the loan application is not expected. The evidence does however show that Carson kept his other employer, Salt River Financial Inc., well advised of his business contacts and did not mention Gunderson or Reynolds. Further, to get the figures and rates for their meeting as Gunderson referenced in his testimony, some prequalification steps such as a good faith estimate should have been generated, but there is no record of such.

c. the evidence showed that Gunderson and Reynolds may have had some bias in favor of or motivation to assist Carson given their relationship both business and personal with Gerre McClintock [Carson's father-in-law]. It is also noted in the prior Order that McClintock was also found not to be credible and indeed had blatantly misrepresented his son in law's continued employment with Salt River[.]

Carson appealed this second OAH decision to the district court, which affirmed the OAH. The district court rejected Carson's argument that the federal decision should be given *res judicata* or collateral estoppel effect in the administrative proceeding and noted that Carson failed to "cite any authority that supports a retroactive application of collateral estoppel or *res judicata*." This appeal followed.

3

## STANDARD OF REVIEW

[¶11]  On appeal from a district court's review of an administrative agency's decision, we give no deference to the district court's decision.  We review the case as if it had come directly to us from the administrative agency.  *Taylor v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 76, ¶ 12, 233 P.3d 583, 586 (Wyo. 2010); *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo. 2008).

[¶12]  Judicial review of an agency's decision is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2013):

> (c)  To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> (i)  Compel agency action unlawfully withheld or unreasonably delayed; and
>
> (ii)  Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A)  Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>
> (B)  Contrary to constitutional right, power, privilege or immunity;
>
> (C)  In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
>
> (D)  Without observance of procedure required by law; or
>
> (E)  Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

In accordance with § 16-3-114(c), we review the agency's findings of fact by applying the substantial evidence standard. *Dale*, ¶ 22, 188 P.3d 561. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bush v. State ex rel. Workers' Comp. Div.*, 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005) (citations omitted). Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for the findings. *Id.* We review questions of law *de novo. Boe v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2009 WY 115, ¶ 7, 216 P.3d 494, 496 (Wyo. 2009).

**DISCUSSION**

[¶13]   In his only issue, Carson argues that the OAH erred when it did not apply collateral estoppel to the issue of whether or not he was in the course of his employment at the time of the automobile accident. He claims all four requirements of collateral estoppel have been met.

[¶14]   The Division submits that collateral estoppel is not properly before the Court but even if the merits are reached on the issue, the original result favors the Division because two of the four requirements of collateral estoppel are not met. In the alternative, the Division submits that Carson did not prove that he was acting within the course of his employment at the time of the accident.

[¶15]   The doctrines of collateral estoppel and *res judicata* do apply in the administrative context. *Slavens v. Board of County Comm'rs*, 854 P.2d 683, 685-86 (Wyo. 1993). This Court has explained that although the doctrines are often used interchangeably, collateral estoppel is more often appropriately used in an administrative setting.

> In *Salt Creek Freightways* [*v. Wyoming Fair Employment Practices Comm'n*, 598 P.2d 435, 437 (Wyo. 1979)], we noted that although many cases speak of res judicata in the administrative context, they actually apply collateral estoppel. *Salt Creek Freightways*, 598 P.2d at 437. Collateral estoppel is the appropriate doctrine since collateral estoppel bars relitigation of previously litigated *issues*. *Salt Creek Freightways*, 598 P.2d at 438 (*quoting Roush v. Roush*, 589 P.2d 841, 843 (Wyo. 1979) (per curiam)). *See also Bresnahan v. May Dep't Stores Co.*, 726 S.W.2d 327, 329 (Mo. 1987) (when a fact is properly determined in one legal proceeding, it is given effect in another lawsuit). Res judicata on the other hand bars relitigation of previously litigated claims or causes of action. *Salt Creek Freightways*, 598 P.2d at 437. *See also Batson v. Shiflett*, 602 A.2d [1191,] 1201 [(Md. 1992)]

(*quoting Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). Since administrative decisions deal primarily with issues rather than causes of action or claims, collateral estoppel is the appropriate doctrine. *Salt Creek Freightways*, 598 P.2d at 437.

*Slavens*, 854 P.2d at 685-86 (emphasis in original). With regard to collateral estoppel, we consider four factors in determining whether the doctrine applies:

> (1) whether the issue decided in the prior adjudication was **identical** with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

*Wilkinson v. State ex rel. Wyo. Workers' Safety & Compensation Div. (In re: Wilkinson)*, 991 P.2d 1228, 1234 (Wyo. 1999) (emphasis in original) (quoting *Slavens*, 854 P.2d at 686).

[¶16] At the district court level the court rejected Carson's argument that collateral estoppel was relevant at all at that stage of the litigation. It stated:

> Petitioner cites the leading Wyoming cases on the doctrine[s] of *res judicata* and collateral estoppel; however, Petitioner fails to cite a single case from any jurisdiction that demonstrates either doctrine being applied retroactively. Absent any authority to support the retroactive application of collateral estoppel or *res judicata*, the Court cannot support Petitioner's argument. Instead, in this case, the administrative agency made a final determination that Petitioner did not appeal. It was only after a later determination made in a different case (and arguably under a different legal standard) was rendered that Petitioner sought to challenge the OAH's decision. In light of Petitioner's failure to cite any authority that supports a retroactive application of collateral estoppel or *res judicata*, Petitioner's argument that the OAH's decision was not in accordance with law fails.

[¶17] We agree with the district court and the Division that collateral estoppel does not apply in this case, for several reasons. First, this Court is not comfortable completely

distinguishing the differences between tort scope of employment tests and workers' compensations injury tests for the purposes of collateral estoppel. There is a difference in the rationale for allowing benefits under the workers' compensations law and the rationale for imposing liability on an employer for the negligent acts of his employee under the principles of vicarious liability. We stated in *Mills v. Reynolds*, 807 P.2d 383, 388 (Wyo. 1991) (citing *Barnette v. Doyle*, 622 P.2d 1349 (Wyo. 1981) (other citations omitted)):

> [Workers' Compensation laws were developed to] counter the lack of recovery that was attributed to assumption of risk, contributory negligence, and the fellow servant rule. These doctrines, as well as other common law principles, had effectively shielded employers from liability. In order to provide compensation not based upon fault or the breach of a duty owed by the employer to the injured employee, the compromise was adopted that afforded immunity to the employer.

"[T]he worker's compensation system in Wyoming is authorized by Art. 10, § 4 of the Wyoming Constitution and provides tort immunity to employers in exchange for employees receiving a type of industrial-accident insurance." *Perry v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2006 WY 61, ¶ 22, 134 P.3d 1242 at 1249 (citing *Spera v. State ex rel. Wyo. Worker's Comp. Div.* 713 P.2d 1155, 1156 (Wyo. 1986)). "[T]he worker's compensation system is not a tort-based system but is, instead, based upon contract." *Id*. This Court said in *Beard v. Brown*, 616 P.2d 726, 736 (Wyo. 1980): [2]

> To be injured within the course or scope of one's employment in the context of the worker's compensation system is not the same thing as to be in the course or scope of one's employment and cause injury to a third person who is foreign to the employee-employer relationship, which is the foundation of the worker's compensations system. . . .
>
> The rule which we have adopted for worker's compensation cases cannot be applied to a negligence case. Our general negligence theory is one based on fault worker's compensation and many other statutory schemes are of a no-fault nature. Within the general negligence sphere, the rules

---

[2] As the Division points out, the Wyoming legislature amended the Wyoming Worker's Compensation Act in 1994 rejecting the rule of liberal construction. The statute now provides: "It is the specific intent of the legislature that benefit claims cases be decided on their merits and that the common law rule of 'liberal construction' based on the supposed 'remedial' basis of workers' benefits legislation shall not apply in these cases." Wyo. Stat. Ann. § 27-14-101(b) (LexisNexis 2013).

regarding "scope of employment" are somewhat different. This is so for a number of reasons. A liberal statute designed to benefit workers is not involved. There is no special relationship giving rise to a special duty as in worker's compensation. There is no sound reason for finding liability without fault for social or economic reasons.

[¶18] Contrast that explanation with general tort principles where fault is a fundamental basis for imposing liability. *See* Wyo. Stat. Ann. § 1-1-109 (LexisNexis 2013). The test of liability in the workers' compensation setting is not the relation of an individual's ***fault*** or negligence to an ***event***, as it is within the tort arena, but rather the relationship of an ***event*** to the employment. As observed in *Larson's Workers' Compensation Law*:

> Tort litigation is an adversary contest to right a wrong between the contestants; workers' compensation is a system, not a contest, to supply security to injured workers and distribute the cost to the consumers of the product.

1 Arthur K. Larson & Lex K. Larson, *Larson's Workers' Compensation Law*, § 1.03 (2013).

[¶19] While the tests for each are not identical, they do overlap. *See Cottonwood Steel Corp. v. Hansen*, 655 P.2d 1226 (Wyo. 1982); *Beard*, 616 P.2d 726. In *Cottonwood*, we developed this concept a bit further and stated:

> In order to grasp the distinction that we will make between *Beard v. Brown* and the case at bar, it is important to keep in mind that Beard presents a tort question and in no way concerns itself with employer or employee immunity under the Worker's Compensation Act, while the case with which we are concerned in this appeal presents an exercise in interpreting a worker's compensation statute. In *Beard*, we were asked to decide whether, under applicable tort law, the employee was, when going home from the workplace, furthering the interests and subject to the control of the employer to such a degree that the employer became vicariously liable for her negligent acts. Here, on the other hand, we are asked to decide, in a worker's compensation case, whether a covered driver of his covered passenger co-employees who is en route home from the work place is in the "scope of * * * [his] employment" as that term is employed in the co-employee immunity section of the worker's compensation law.

In *Beard v. Brown* we very carefully distinguished between the meaning of the term "scope of employment" when used in the law of tort as compared to its employment in worker's compensation law. After referring to opinions from this court in which we held that a worker going to and from work will be held to be in the "*scope or course*" (emphasis added) of employment where the employer pays for the time consumed in this work-related activity, we said, distinguishing Beard from this body of law:

> "The rule stated in the above citation is considerably broader than was necessary to accommodate the facts of the cases in which it has been used. In two of the above-cited cases, the employer was either active in arranging or providing transportation for an employee. By saying this, we do not intend to overrule or limit in any way the holdings of those cases. *It is sufficient to point out that they are all worker's compensation cases and, as such, their holdings are not generally applicable in the negligence area. To be injured within the course or scope of one's employment in the context of the worker's compensation system is not the same thing as to be in the course or scope of one's employment and cause injury to a third person who is foreign to the employee-employer relationship, which is the foundation of worker's compensation system. Worker's compensation is a creature of statute and one designed especially to protect workers injured in the course of their work. The statute is liberally construed to provide coverage to the worker. Within the context of the statute, the employer has a special duty vis-a-vis the employees who work for him.* Under worker's compensation, an employee is covered for injuries which arise '\* \* \* out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer, incurred while at work in places where the employer's business requires an employee's presence \* \* \*,' § 27-12-102(a)(xii), W.S.1977. This states a problem of proof different from that which is encountered in the negligence area.
>
> "*The rule which we have adopted for worker's compensation cases cannot be applied to a negligence*

9

*case. Our general negligence theory is one based on fault--worker's compensation and many other statutory schemes are of a no-fault nature. Within the general negligence sphere, the rules regarding 'scope of employment' are somewhat different. This is so for a number of reasons. A liberal statute designed to benefit workers is not involved. There is no special relationship giving rise to a special duty as in worker's compensation. There is no sound reason for finding liability without fault for social or economic reasons.*

"The Arizona Supreme Court recently addressed this question:

" '* * * [T]he going and coming rule was largely judicially developed in order to provide compensation to workmen for injuries which were incurred while within the range of dangers associated with their employer's premises. There can therefore be no reason to apply it to a situation where the recipient of the benefits of the rule is not an injured workman.' *Driscoll v. Harmon,* 1979, 124 Ariz. 15, 601 P.2d 1051, 1052."

"We agree with this reasoning.

"The rule as regards 'scope of employment' in the general negligence sphere is that set out in *Miller v. Reiman-Wuerth Co.* [598 P.2d 20], supra, i.e., there must be some direct benefit to the employer and the employer must exercise some control over the employee. Buller was in no different status than her two passengers who were likewise being paid and doing nothing but being carried to the place where they too would commence the duties for which they were employed. To the extent that rule is inconsistent with the worker's compensation rule, the inconsistency is explainable, sound, and well-grounded as discussed above." (Emphasis added.) 616 P.2d at 736-737.

From this quote from *Beard v. Brown* it should be clear to all that we were distinguishing "scope of employment" in the area of tort from "course *or* scope" of employment in the worker's compensation context. And it is to be noted in

10

*Beard* that the terms "course of employment" and "scope of employment" are used interchangeably when alluding to the liberal interpretation rules of worker's compensation law. We do not differentiate in *Beard* between the words "scope" on the one hand and "course" on the other. "Course *or* scope" is the language we use. We considered that, for worker's compensation purposes, these terms are interchangeable. In other words, they mean the same thing. This being our intention, it follows that the distinction that the appellants urge is without merit. That is, we do not, for purposes of the worker's compensation law, distinguish between the meaning of "scope of their employment" as it appears in the immunity section, § 27-12-103(a), supra n.2, and "course of employment" as it appears in § 27-12-102(a)(xii), supra n.3, which is the definition of compensable injuries section of the Act. To make such a distinction would lead to the incongruous holding which would say that, under the facts of this case, the workers were, when returning home from work, within the "course of their employment" for the purpose of granting worker's compensation benefits for their injuries and deaths, but the covered driver was *not*, at that time, within the "scope of * * * [his] employment" for the purpose of furnishing § 27-12-103(a) immunity to his estate from suit by covered passenger co-employees.

This leaves us to reach the following conclusion: The case at bar, being a worker's compensation case, cannot be resolved by holding the term "scope of * * * [his] employment" to have the same meaning that we said it had in *Beard v. Brown*, supra, which was a tort case. The meaning of that term is different when it is used in the worker's compensation statute than it is when employed in the law of tort.

*Cottonwood*, 655 P.2d at 1233-1235 (italics in original). If a finding that Carson was acting within the scope of his employment for tort liability purposes would necessarily mean that he was also acting within the scope for Wyoming Worker's Compensation Act purposes, that the tests serve different policy objectives does not necessarily prevent the application of collateral estoppel. Nonetheless, collateral estoppel remains inapplicable in this instance, in large part because of the necessity of a retroactive application.

[¶20] Carson insists that he is not asking for a "retroactive" application of collateral estoppel. Rather, he asserts that the federal court's conclusion -- that he was in the course

and scope of his employment when he lost control of his vehicle -- was the ***first*** decision on the facts and evidence used by the federal jury. As a result the OAH on remand was collaterally estopped from answering the very same question asked of the federal jury in the opposite. Thus, he submits that labeling the application of collateral estoppel as "retroactive" is misleading. He further relies upon other jurisdictions to illustrate his point that rather than collateral estoppel being retroactively applied here, it would instead be applied with this in mind: When inconsistent factual determinations are made in separate actions, the later determination is accorded conclusive effect in a third action. *Casillas v. Arizona Dep't of Economic Sec.*, 153 Ariz. 579, 739 P.2d 800, 802 (Ariz. 1986).

[¶21] It is typically true that if two or more courts render inconsistent judgments on the same claim or issue, a court facing the same issue in yet a third proceeding is normally bound to follow the most recent determination that satisfies the requirements of *res judicata*. According to the Restatement (Second) of Judgments: "When in two actions inconsistent final judgments are rendered, it is the later, not the earlier, judgment that is accorded conclusive effect in a third action under the rules of res judicata." Restatement (Second) of Judgments § 15 (1982). The comments to Section 15 state in part that "when a prior judgment is not relied upon in a pending action in which it would have had conclusive effect as res judicata, the judgment in that action is valid even though it is inconsistent with the prior judgment." *Id.*, comment b. *See also Casillas*, 739 P.2d at 802 (applying the same rule to collateral estoppel).

[¶22] In our opinion, this case does not involve a third decision of the same general issue but rather the first. The Restatement does not provide that a second judgment ever controls over a first one on *res judicata* grounds, which strongly indicates that *res judicata* cannot be applied in retrospect. Here, neither can collateral estoppel. Consequently, a party must live with the contradictory judgments unless there are grounds to revisit the ***first*** determination under W.R.C.P. 60 and the trier of fact determines that it should be modified. Here, there was no such conclusion.

[¶23] Collateral estoppel also neither bars nor requires W.R.C.P. 60(b) relief in the case of contradictory decisions, as we have here. "[T]he doctrines of *res judicata*, collateral estoppel, and judicial estoppel do not bar a motion for relief from judgment under W.R.C.P. 60(b)." *MAM v. State Dep't of Family Servs.*, 2004 WY 127, ¶ 13, 99 P.3d 982, 985 (Wyo. 2004). This Court cannot imagine a scenario where the doctrines should compel a change in the original judgment any more than they can preclude such a change. In *Carson I*, we found that the district court acted well within its discretion to supplement the record pursuant to W.R.A.P. 12.08. However, we reversed and remanded for the district court to remand to the OAH to consider the supplemented record. Since Rule 60(b) does not fall within the doctrines of *res judicata* and collateral estoppel, the hearing examiner was free to evaluate the supplemental evidence and properly found that Carson still did not prove the claim should be reopened or that a different result should be reached

under W.R.C.P. 60(b). The record contains careful analysis and substantial evidence to support that conclusion. The OAH stated that

> … even with the supplemental materials, the only offered evidence of a causal connection between Carson's trip to Jackson on January 19, 2006, and his employment with Metrocities was the testimony of Gunderson and Reynolds that an appointment had been arranged to discuss a refinance. The other suggestion that he may have been distributing or picking up marketing materials is simply speculation.

The OAH went on to explain:

> 49. The testimony of Reynolds and Gunderson is not deemed persuasive because,

> a. their testimony is not consistent. As set forth above Gunderson testified that Reynolds was instrumental in setting up the meeting. Reynolds states it was all Gunderson's doings.

> b. their testimony is not supported by any documentation. Gunderson and Reynolds' testimony that they had not yet filled out a loan application was not disputed and therefore evidence of the loan application is not expected. The evidence does however show that Carson kept his other employer, Salt River Financial Inc., well advised of his business contacts and did not mention Gunderson or Reynolds. Further, to get the figures and rates for their meeting as Gunderson referenced in his testimony, some prequalification steps such as a good faith estimate should have been generated, but there is no record of such.

> c. the evidence showed that Gunderson and Reynolds may have had some bias in favor of or motivation to assist Carson given their relationship both business and personal with Gerre McClintock [Carson's father-in-law]. It is also noted in the prior Order that McClintock was also found not to be credible and indeed had blatantly misrepresented his son in law's continued employment with Salt River[.]

13

We conclude that substantial evidence existed to support the OAH's decision, and we affirm.

## CONCLUSION

[¶24] We affirm the district court's order affirming the administrative action taken by the OAH.