# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 126

### APRIL TERM, A.D. 2020

September 28, 2020

IN THE MATTER OF THE
WORKER'S COMPENSATION
CLAIM OF MICHAEL VINSON:

TATA CHEMICALS SODA ASH
PARTNERS, LTD,

Appellant
(Respondent),

v.                                                          S-19-0086, S-20-0038

MICHAEL VINSON,

Appellee
(Petitioner).

*Appeal from the District Court of Sweetwater County*
The Honorable Suzannah G. Robinson, Judge

*Representing Appellant:*
　　　Stephen H. Kline, Kline Law Office, P.C., Cheyenne, Wyoming.

*Representing Appellee:*
　　　Donna D. Domonkos, Domonkos Law Office, LLC, Cheyenne, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ,** Justice.

[¶1]     Michael Vinson injured his right hand on a locker while working for Tata Chemicals Soda Ash Partners, Ltd. (Tata) and contracted a serious bacterial infection.  The Wyoming Department of Workforce Services, Workers' Compensation Division (Division) awarded benefits but the Office of Administrative Hearings (OAH) decided Mr. Vinson's injuries were not compensable because they were excluded from coverage under the "illness or communicable disease" exclusion.  *See* Wyo. Stat. Ann. § 27-14-102(a)(xi)(A) (LexisNexis 2019).  Mr. Vinson filed an untimely Petition for Review with the district court.  The district court concluded Mr. Vinson was entitled to an extension of time to file his Petition because he had established excusable neglect based on an undue delay in the mail.  It also decided Mr. Vinson was entitled to benefits because the "illness or communicable disease" exclusion did not apply.  Tata appeals from the district court's excusable neglect determination (Appeal No. S-20-0038) and its decision concerning Mr. Vinson's eligibility for benefits (Appeal No. S-19-0086).  We affirm.

## ISSUES

[¶2]     We restate the issues as:

> 1.      Did the district court abuse its discretion in concluding Mr. Vinson had established excusable neglect justifying an extension of time to file his Petition for Review?

> 2. Is the OAH's decision that the "illness or communicable disease" exclusion applied supported by substantial evidence, arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law?

## FACTS

[¶3]     On June 10, 2016, Mr. Vinson was working underground at Tata's trona mine near Green River.  Ten minutes before his shift ended, Mr. Vinson exited the mine and, as he did after every shift, took a shower in the employee locker room.  After his shower, he hung his towel in his employee locker.  While doing so, he scraped the knuckle of his right index finger on the locker.  The wound bled "for a little bit and stopped."  He did not report the injury to Tata that day.

[¶4]     The next day was Saturday and Mr. Vinson did not work.  He woke up late and played golf on the Internet.  Later that afternoon, he rode his motorcycle from his home in Rock Springs to a picnic in Green River.  Before he left, he told his wife "his knuckle was kind of red from hitting it on the locker at work."  Mr. Vinson stayed at the picnic for only an hour because he started feeling nauseous.  Once home, he noticed his right hand was

1

"swollen and red." He laid down in his bed and stayed there the rest of the night. After lying down, Mr. Vinson recalls very little other than he had chills and was "shivering" and "shaking" throughout the night.

[¶5]    The next day, Mr. Vinson's wife found him in bed with his right hand and arm swollen up to near his elbow; he "wasn't making a lot of sense" and was talking to himself. With the help of her son and son-in-law, she took Mr. Vinson to the local emergency room. He was life-flighted to the University of Utah hospital in Salt Lake City, where he was diagnosed with necrotizing fasciitis due to Group A beta-hemolytic streptococcus (Strep A), more commonly known as flesh-eating bacteria.[1]  He stayed at the hospital for over a month, undergoing aggressive antibiotic therapy, multiple surgical debridements to achieve control over the infection, and skin grafting. Although he will have some scarring from the skin grafting, he will eventually regain full strength in his right arm.

[¶6]    Mr. Vinson filed for workers' compensation benefits with the Division.  In the "Report of Injury," he claimed he injured his right hand by hitting it on the corner of a locker.  The Division found Mr. Vinson's injury to be compensable and awarded him benefits.  Tata objected, arguing Mr. Vinson's medical condition was not an "injury" as defined by § 27-14-102(a)(xi) because the infection did not arise out of and in the course of his employment, and requested a contested case hearing.  The Division referred the matter to the OAH.

[¶7]    In the OAH, the parties filed cross-motions for summary judgment.  Relevant here, Tata argued Mr. Vinson's injuries were not compensable because they were excluded from coverage under the "illness or communicable disease" and "day-to-day living" exclusions. *See* § 27-14-102(a)(xi)(A), (G).  The parties agreed no hearing was necessary and the case could be decided on the briefs and evidence presented.

[¶8]    The OAH found and concluded Mr. Vinson had "proved by a preponderance of the evidence his June 10, 2016 knuckle scrape and resulting Strep A infection were work-related injuries within the definition of Wyoming Statute § 27-14-102(a)(xi) (LexisNexis)."  It rejected Tata's reliance on the "day-to-day living" exclusion but decided Tata had shown Mr. Vinson's injury was excluded from coverage under the "illness or communicable disease" exclusion.  In deciding the latter exclusion applied, the OAH described the injury for which Mr. Vinson was seeking benefits as the "Strep A bacterial infection and necrotizing fasciitis" and specifically rejected Mr. Vinson and the Division's argument that the injury was the knuckle abrasion.

---

[1] Dr. Mark Dowell, an infectious disease expert, described necrotizing fasciitis as "a severe infection also involving an immune system reaction specifically below the skin, below the fat layer, in the tissue that covers the muscle.  And it is what we call a tissue plane.  And the infection can get into that tissue plane and rapidly spread, leading to involvement throughout the body, can kill muscle, can clot veins, can do a lot of different things both from the bug itself, the toxins it produces and the immune system reaction to the presence of the invading organism or organisms, depending on the case."

[¶9]   Mr. Vinson filed a "Petition for Judicial Review of Administrative Action" (Petition) with the district court pursuant to Wyoming Rule of Appellate Procedure (W.R.A.P.) 12.   The district court decided the OAH's decision that the "illness or communicable disease" exclusion applied was not in accordance with law.  It disagreed with the OAH that the injury for which Mr. Vinson sought compensation was the Strep A infection and necrotizing fasciitis.  It concluded the injury for which Mr. Vinson sought compensation was the "scrape which the OAH has found to be a compensable injury." Because the OAH found a causal connection between the wound and the infection, the court decided "the infection was a compensable consequence of the original work-related scrape injury."   It determined the "illness or communicable disease" exclusion did not apply because "[Mr.] Vinson's infected scrape is not similar to an ordinary 'illness or communicable disease' such as a cold or flu."

[¶10]  Tata appealed (Appeal No. S-19-0086).  It claimed the OAH correctly applied the "illness or communicable disease" exclusion but erred in not applying the "day-to-day living" exclusion.  It also argued for the first time that the district court did not have jurisdiction over Mr. Vinson's Petition because it was not filed within 30 days of the OAH's decision as required by W.R.A.P. 12.04(a).  We decided the Petition was due on March 5, 2018, but was not filed until March 6, 2018, one day late.  *See Matter of Vinson (Vinson I)*, 2019 WY 107, ¶ 7, 450 P.3d 234, 236 (Wyo. 2019).  While the timely filing of a petition for review is mandatory and jurisdictional, we recognized W.R.A.P. 12.04(b) allows a district court to extend the deadline for filing such petition upon a showing of excusable neglect.  *Id.*, ¶ 8, 450 P.3d at 236.  Because the district court's decision did not address the issue and the record did not reveal whether the issue had been considered, we remanded to the district court for the limited purpose of determining whether excusable neglect extended the time Mr. Vinson had to file his Petition.  *Id.*

[¶11]  On remand, the district court found the issue to be a "close call" but concluded Mr. Vinson had established excusable neglect based on an unreasonable delay in the mail.  It extended the time to file his Petition to March 6, 2018, rendering his Petition timely.  Tata again appealed, this time from the district court's finding of excusable neglect (Appeal No. S-20-0038).  We consolidated the appeals.

**DISCUSSION**

### 1. *Excusable Neglect*

[¶12] Tata argues the district court abused its discretion in concluding Mr. Vinson established excusable neglect justifying an extension of time in which to file his Petition. It contends a reasonably prudent lawyer faced with the filing deadline in this case would not have relied solely on mailing the Petition with the United States Postal Service (USPS)

but rather would have followed up with the district court to ensure it arrived on time and, if not, taken other measures to timely file it.

### a.  *Standard of Review*

[¶13]  The "timely filing of a petition for review of administrative action is mandatory and jurisdictional." *Chevron U.S.A., Inc. v. Dep't of Revenue*, 2007 WY 62, ¶ 7, 155 P.3d 1041, 1043 (Wyo. 2007) (citations omitted).  While we normally review jurisdictional issues de novo, we review for an abuse of discretion a district court's decision as to whether to extend the time for filing a petition for review based on a showing of excusable neglect.  *Id.*, ¶ 6, 155 P.3d at 1043 (citation omitted).  In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could "reasonably conclude as it did." *Humphrey v. Humphrey*, 2007 WY 72, ¶ 7, 157 P.3d 451, 453 (Wyo. 2007) (citation omitted).

### b.  *Discussion*

[¶14]  W.R.A.P. 12.04(a) requires a petition for judicial review of an administrative action to be filed in the district court "within 30 days after service upon all parties of the final decision of the agency[.]"  The district court may extend that deadline for no more than 30 days "[u]pon a showing of excusable neglect."  W.R.A.P. 12.04(b).

[¶15]  An undue delay in the mail may constitute excusable neglect.  *Bosler v. Morad*, 555 P.2d 567, 569-70 (Wyo. 1976).  *See also, Crossan v. Irrigation Dev. Corp.*, 598 P.2d 812, 813 (Wyo. 1979) ("Excusable neglect is measured on a strict standard to take care of genuine emergency conditions, such as death, sickness, *undue delay in the mails . . . .*) (citation omitted) (emphasis added).  In determining whether an undue delay in the mail constitutes excusable neglect, we ask whether the party took action "a reasonably prudent person" would have taken under the circumstances.  *Bosler*, 555 P.2d at 570; *Crossan*, 598 P.2d at 813 (determination of excusable neglect asks whether certain conduct" might be the act of a reasonably prudent person under the circumstances").

[¶16]  The district court decided Mr. Vinson had established excusable neglect based on an undue delay in the mail.  It found Mr. Vinson's counsel had mailed the Petition from Cheyenne on February 28, 2018, three business days and five calendar days before the deadline, and the Petition did not arrive at the Green River courthouse until March 6, 2018, four business days and six calendar days later.  It concluded counsel "took action that a reasonably prudent person would have taken[] in believing mail would have adequate time to be delivered from one location in Wyoming to another location in Wyoming[] within three business days."  It noted counsel had not waited until the "eleventh hour" to file the Petition and seven out of ten filings in the case had been mailed from Cheyenne and filed at the Green River courthouse in three business days or less.  The district court also

4

concluded Tata had not been prejudiced by the late filing because neither the parties nor the court had realized the Petition had been filed late until the case was on appeal.

[¶17] The district court did not abuse its discretion in deciding Mr. Vinson had established excusable neglect. In *Bosler*, Mr. Bosler mailed his notice of appeal from Laramie on July 28, 1975; it was not filed in Casper until July 31, 1975, one day past the filing deadline. *Bosler*, 555 P.2d at 568. We concluded Mr. Bosler had established excusable neglect based on an undue delay in the mail because he had acted as a "reasonably prudent person" in believing his notice of appeal would reach the Casper courthouse within two days of being mailed from Laramie because every other pleading in the matter had not taken more than two days to be delivered. *Id.* at 570. We also found appellees were not prejudiced by the late filing as they were on notice of Mr. Bosler's intent to appeal. *Id.*

[¶18] Tata argues *Bosler* is not on point for two reasons. First, Mr. Bosler filed a timely motion for a finding of excusable neglect in the district court, whereas Mr. Vinson did not file such a motion. *See Bosler*, 555 P.2d at 568-69. As the district court correctly recognized, nothing in Rule 12.04(b) requires a petitioner to request an extension of time based on excusable neglect. The rule is silent as to how or when the question of excusable neglect should be presented to the district court. Moreover, in *Vinson I*, we specifically remanded the matter to the district court to decide whether excusable neglect extended the time for filing the Petition, despite the fact Mr. Vinson had not requested such an extension. *Vinson I*, ¶ 8, 450 P.3d at 236.

[¶19] Second, Tata claims *Bosler* was decided in 1976 when counsel had to rely on the timely delivery of the mail within a certain period of time in order to comply with filing deadlines. In 2018, it argues, counsel had other avenues available to secure the timely filing of the Petition, including (1) using a private delivery service or the USPS's one- or two-day guaranteed delivery services, (2) faxing the Petition to the district court under Wyoming Rule of Civil Procedure (W.R.C.P.) 5(e), or (3) emailing the Petition to her Green River office to be printed and hand-delivered to the courthouse. It relies on a number of federal cases decided since *Bosler* which have concluded it is unreasonable to rely upon the delivery of regular mail when there are other delivery options available. *Witty v. Hewlett-Packard Colo., Inc.*, Nos. 93-1438, 94-1035, 1995 WL 125540, 51 F.3d 287 (10th Cir. 1995) (unpublished); *Penrod Drilling Co. v. United States*, 925 F.2d 406 (Fed. Cir. 1991); *Howard v. United States*, 22 Cl.Ct. 630 (Cl.Ct. 1991).

[¶20] The cases Tata relies upon are not controlling on this Court. Moreover, they represent only one side of a split of authority on the issue. *See Witty*, 1995 WL 125540, *1 (recognizing a split of authority as to whether it is excusable neglect to rely on the USPS to timely deliver mail). *Compare Penrod*, 925 F.2d at 408-09 (finding lower court did not abuse its discretion in concluding Penrod had not established excusable neglect; Penrod assumed the risk that its motion would not be timely received by opposing counsel through the ordinary mail and it could have avoided the problem by personally serving the motion

5

or by serving it via certified or registered mail), *and Howard*, 22 Cl.Ct. at 632 (concluding Mr. Howard's "absolute reliance on alleged Postal Service assurances that the normal expected delivery time for first class mail is three days was entirely unreasonable in the face of a deadline as important as this"), *with Schultz ex rel. Schultz v. Pojoaque Tribal Police Dep't*, 242 P.3d 259, 265 (N.M. 2010) ("Petitioner reasonably anticipated that if she mailed her notice of appeal from Albuquerque to Santa Fe via the USPS, that it would arrive within four days. The unexpected delay that occurred in this case was caused by the USPS and thus constituted an unusual circumstance outside Petitioner's control."), *and Scarpa v. Murphy,* 782 F.2d 300, 301 (1st Cir. 1986) ("There was no mistake by counsel, excusable or otherwise. Rather, there was inexcusable neglect by the Post Office to take more than five days (even though this included a weekend) to transmit an adequately addressed letter three miles, and no basis for charging counsel for failing to think that more might be needed.").

[¶21] Tata also argues the district court erred in relying on the time-frames in which previously mailed filings reached Green River from Cheyenne because there was no evidence that Mr. Vinson's counsel relied on these time-frames in deciding when to mail the Petition. The district court acknowledged Mr. Vinson's counsel had not provided an affidavit or other testimony regarding her knowledge, prior experience, and/or beliefs regarding the timing of mail delivery between Cheyenne and Green River and stated it would have welcomed such evidence. Nevertheless, the court concluded it was able to decide the matter without such evidence. That conclusion was reasonable. Although counsel did not provide an affidavit or other sworn testimony, she did argue at a hearing that she believed the Petition would arrive within three business days of being mailed because our rules generally anticipate mailings will be received within three days. *See, e.g.,* W.R.C.P. 6(d) ("Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party, and the notice or paper is served upon the party by mail . . ., three days shall be added to the prescribed period, provided however, this rule shall not apply to service of process by registered or certified mail under Rule 4(r)."); W.R.A.P. 14.03(a) ("Whenever a party has the right, or is required to do some act or take some proceedings within a prescribed period from or after the service of a brief, notice or other paper upon that party, and the brief, notice or other paper, is served upon the party by mail, three days shall be added to the prescribed period."). The time-frames in which other mailed filings reached Green River from Cheyenne reinforced counsel's belief.

[¶22] Finally, Tata relies on *Chevron* for the proposition that the district court abused its discretion in finding Mr. Vinson had established excusable neglect. That case is inapposite. Chevron's counsel's legal assistant mis-calendared the deadline for filing the petition for review and counsel did not notice the error until it was too late to secure its timely filing. *Chevron U.S.A., Inc.*, ¶ 5, 155 P.3d at 1042-43. Counsel sought to extend the time for filing the petition, claiming the late filing was the result of excusable neglect. *Id.*, ¶ 5, 155 P.3d at 1043. The district court declined to extend the time and we affirmed. *Id.*, ¶ 1, 155 P.3d

6

at 1042. We concluded excusable neglect traditionally occurs only when "a party acts in a reasonably prudent manner, *but an outside force creates an undue delay*, resulting in an untimely filing." *Id.*, ¶ 9, 155 P.3d at 1043 (emphasis added). Because the untimely filing was the result of "simple human error" and there was "no evidence anything *outside counsel's control* caused, or was even a factor leading to, the untimely filing," we found the district court had not abused its discretion in finding the circumstances did not constitute excusable neglect. *Id.*, ¶ 11, 155 P.3d at 1044. In this case, an outside force— the USPS—created the undue delay.

## 2. *"Illness or Communicable Disease" Exclusion*

[¶23] Tata argues the OAH's decision that the "illness or communicable disease" exclusion applied to Mr. Vinson's injury is supported by substantial evidence and is not arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law because necrotizing fasciitis caused by Strep A is a communicable disease and the nature of Mr. Vinson's employment at the mine did not increase his risk of contracting it. In the alternative, Tata maintains the OAH's decision that the "day-to-day living" exclusion did not apply was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law because the scrape to Mr. Vinson's knuckle was sustained when he was no longer under Tata's supervision or control and it "was a normal bump or bruise of a type that individuals get in any setting."

[¶24] Tata cannot challenge the OAH's decision regarding the inapplicability of the "day-to-day living" exclusion because it did not file a cross-petition for review with the district court contesting that decision. Tata was required to filed a cross-petition for review because its argument seeks to "change" the OAH's decision, not uphold it. *See GOB, LLC v. Rainbow Canyon, Inc.*, 2008 WY 157, ¶ 10, 197 P.3d 1269, 1271-72 (Wyo. 2008) (quoting Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* 2d § 4478.6 at 831 (2002)). With respect to the "illness or communicable disease" exclusion, we conclude the OAH's decision applying the exclusion was arbitrary and capricious, not supported by substantial evidence, and not in accordance with the law.

### a. *Standard of Review*

[¶25] When considering an appeal from a district court's review of an administrative agency decision, "we give no special deference to the district court's decision. Instead, we review the case as if it had come directly to us from the administrative agency." *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo. 2008) (citations and quotations omitted). *See also, Carson v. State ex rel., Wyo. Workers' Safety & Comp. Div.*, 2014 WY 42, ¶ 11, 322 P.3d 1261, 1264 (Wyo. 2014). "Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2007)," which provides in relevant part:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; [or]

. . .

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

*Dale*, ¶¶ 8-9, 188 P.3d at 557-58.

[¶26] Pursuant to this statute, we review an administrative agency's findings of fact using the substantial evidence test. *Id.*, ¶ 22, 188 P.3d at 561. Under this standard of review,

"we examine the entire record to determine whether there is substantial evidence to support an agency's [factual] findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence."

*Id.*, ¶ 11, 188 P.3d at 558 (quoting *Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 91, ¶ 12, 49 P.3d 163, 168 (Wyo. 2002)) (other citation omitted). Because the agency "'is the trier of fact and has the duty to weigh the evidence and determine the credibility of witnesses,'" we give deference to its factual findings unless they are "'clearly contrary to the overwhelming weight of the evidence on record.'" *Id.* (quoting *Newman*, ¶ 26, 49 P.3d at 173) (other citations omitted). "We review an agency's conclusions of law *de novo*, and will affirm only if the agency's conclusions are in accordance with the law." *Leavitt v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 95, ¶ 19, 307 P.3d 835, 840 (Wyo. 2013) (quotations omitted).

8

[¶27] "Even if an agency record contains sufficient evidence to support the administrative decision under the substantial evidence test, this Court applies the arbitrary-and-capricious standard as a 'safety net' to catch other agency action that may have violated the Wyoming Administrative Procedures Act [(W.A.P.A.)]." *Rodgers v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2006 WY 65, ¶ 19, 135 P.3d 568, 575 (Wyo. 2006) (citations omitted); *see also Dale*, ¶ 23, 188 P.3d at 561 ("The arbitrary and capricious standard remains a 'safety net' to catch agency action which prejudices a party's substantial rights or which may be contrary to the other W.A.P.A. review standards yet is not easily categorized or fit to any one particular standard.") (quoting *Newman*, ¶ 23, 49 P.3d at 172).

> The arbitrary and capricious test requires the reviewing court to review the entire record to determine whether the agency reasonably could have made its finding and order based upon all the evidence before it. The arbitrary and capricious standard is more lenient and deferential to the agency than the substantial evidence standard because it requires only that there be a rational basis for the agency's decision.

*Tayback v. Teton Cnty. Bd. of Cnty. Comm'rs*, 2017 WY 114, ¶ 13, 402 P.3d 984, 988 (Wyo. 2017) (citations and quotations omitted). "Under the umbrella of arbitrary and capricious actions would fall potential mistakes such as inconsistent or incomplete findings of fact, any violation of due process[,]" or treating evidently identical cases differently without sufficient reason. *Rodgers*, ¶ 19, 135 P.3d at 575 (quoting *Decker v. State ex rel. Wyo. Med. Comm'n*, 2005 WY 160, ¶ 24, 124 P.3d 686, 694 (Wyo. 2005)); *Exaro Energy III, LLC v. Wyo. Oil & Gas Conservation Comm'n*, 2020 WY 8, ¶ 24, 455 P.3d 1243, 1252 (Wyo. 2020).

### b. Discussion

[¶28] "A workers' compensation claimant has the burden of proving all of the essential elements of [his] claim by a preponderance of the evidence." *Middlemass v. State ex rel. Wyo. Workers' Safety & Comp. Div'n*, 2011 WY 118, ¶ 14, 259 P.3d 1161, 1165 (Wyo. 2011) (citing *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Slaymaker*, 2007 WY 65, ¶ 13, 156 P.3d 977, 981 (Wyo. 2007), and *Sanchez v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2006 WY 64, ¶ 7, 134 P.3d 1255, 1257 (Wyo. 2006)). "'This burden includes establishing the cause of the condition for which compensation is claimed and proving that the injury arose out of and in the course of employment.'" *Middlemass*, ¶ 14, 259 P.3d at 1165 (quoting *Hanks v. City of Casper*, 2001 WY 4, ¶ 6, 16 P.3d 710, 711 (Wyo. 2001)).

[¶29] The Worker's Compensation Act defines injury as "any harmful change in the human organism other than normal aging . . . arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's

presence." Section 27-14-102(a)(xi). For an injury to "arise out of and in the course of employment," there must be a "'causal nexus between the injury and some condition, activity, environment or requirement of the employment.'" *Matter of Lysne*, 2018 WY 107, ¶ 13, 426 P.3d 290, 295 (Wyo. 2018) (quoting *Beall v. Sky Blue Enterprises, Inc.*, 2012 WY 38, ¶ 21, 271 P.3d 1022, 1032 (Wyo. 2012)).

[¶30]   The OAH determined Mr. Vinson proved by a preponderance of the evidence that the damage to his knuckle was a work-related injury under § 27-14-102(a)(xi). Tata did not challenge this determination and it is supported by substantial evidence. Dr. Mark E. Dowell, an infectious disease specialist who the OAH found credible and highly qualified to offer his opinion, testified the wound to Mr. Vinson's knuckle was a "harmful change in the human organism other than normal aging." The undisputed evidence showed a causal connection between the knuckle injury and some condition, activity, environment or requirement of Mr. Vinson's employment at Tata. As the OAH explained:

> There is no dispute that [Mr.] Vinson scraped his knuckle while on Tata's premises, on a locker owned by Tata, and a locker provided by Tata for [Mr.] Vinson to keep his towel and clothes. [Mr.] Vinson credibly testified he showers every day after working in Tata's trona mine and he keeps dirty clothes for work in one locker and clean clothes in a separate locker. According to [Mr.] Vinson and his Report of Injury, his work shift is from 6:00 a.m. to 2:00 p.m. and he scraped his knuckle at approximately 1:55 p.m. In addition, [the] Affidavit [of Tata's Human Resources Manager at the Green River mine] indicated Tata provides the showers "as a benefit" to the miners.
>
> [] Although [Mr.] Vinson is not required to shower and a union contract states showering is unpaid time, the weight of the evidence established his work conditions, work activities, or work environment caused, aggravated, or contributed significantly to his injury. [Mr.] Vinson's work conditions in the underground trona mine are sufficiently dirty that Tata offers, as a benefit, a shower and lockers for its employees. [Mr. ]Vinson was showering and using the Tata locker because his work operating mining equipment caused him to get dirty. The simple fact that [Mr.] Vinson may not have been "on the clock" is not determinative of whether his work conditions, work activities, or work environment caused, aggravated, or contributed significantly to his injury. . . .

[¶31] A compensable injury "may ripen into a condition which requires additional medical attention." *Morris v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 119, ¶ 47, 403 P.3d 980, 993 (Wyo. 2017) (citing *Bodily v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2014 WY 39, ¶ 21, 320 P.3d 240, 245 (Wyo. 2014)). Such subsequent condition is also compensable if it is causally connected to the compensable injury. *Id.* (citing *Johnson v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2014 WY 33, ¶ 21, 321 P.3d 318, 323 (Wyo. 2014)). *Compare Matter of Lysne*, ¶ 25, 426 P.3d at 297 (deciding Mr. Lysne's proposed knee replacement surgery was compensable because substantial evidence demonstrated the surgery was causally connected to his compensable injury), *with Dale*, ¶ 51, 188 P.3d at 566 (concluding Mr. Dale's November 2004 staph infection was not compensable because he failed to show it was causally connected to his August 2004 work-related injury). "Medical evidence is typically required to [establish causation] unless the [subsequent] condition is 'immediately and directly or naturally and probably' the result of the workplace incident." *Morris*, ¶ 47, 403 P.3d at 993 (quoting *Guerrero v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2015 WY 88, ¶ 25, 352 P.3d 262, 270 (Wyo. 2015)) (other quotations omitted).

[¶32] The OAH found Mr. Vinson had shown his Strep A infection and necrotizing fasciitis were causally connected to his knuckle wound. Again, Tata did not challenge this finding and it is supported by substantial evidence. *Dale, ¶* 35, 188 P.3d at 563 (the determination of whether a claimant has proven a causal connection between a work-related injury and the injury for which workers' compensation benefits are sought is a question of fact). Dr. Dowell opined that "to a high degree of medical probability, [Mr.] Vinson's severe infection [was] causally related to the injury he sustained at work on 06/10/2016 [i.e., the knuckle scrape]." He explained he reached this opinion based on the fact that the abrasion and necrotizing fasciitis occurred to the same extremity and within a time frame one would expect between the injury and the onset of symptoms. He also explained the Strep A organism was likely colonized on Mr. Vinson's skin and the scrape served as a "portal of entry," allowing the organism to gain entry into the deeper tissues of Mr. Vinson's hand. Tata did not contest Dr. Dowell's opinion. Because Mr. Vinson established his subsequent Strep A infection and necrotizing fasciitis were causally connected to his compensable injury (i.e., the scrape), these conditions were also compensable.

[¶33] Once a claimant meets his burden of proving all of the essential elements of his claim, "the burden shifts to the party opposing benefits to establish an exclusion from worker's compensation coverage." *Shepherd of Valley Care Ctr. v. Fulmer*, 2012 WY 12, ¶ 20, 269 P.3d 432, 438 (Wyo. 2012). Relevant here, § 27-14-102(a)(xi)(A) excludes from coverage "[a]ny illness or communicable disease unless the risk of contracting the illness or disease is increased by the nature of the employment."

[¶34] The OAH decided Tata had proved Mr. Vinson's injury was excluded from coverage under the "illness or communicable disease" exclusion. In doing so, however,

11

the OAH described the injury for which Mr. Vinson sought to be compensated as the "Strep A bacterial infection and necrotizing fasciitis" and specifically rejected Mr. Vinson and the Division's argument that the injury was the knuckle wound. It found "[b]ased upon Dr. Dowell's description of how the Strep A bacteria is transmitted, there is no reasonable dispute that it is a communicable disease." In this respect, the OAH's decision was arbitrary and capricious as it inconsistently found the "injury" to be the "scrape" for one purpose (i.e., that Mr. Vinson had proved a work-related injury) but not for another (i.e., that Tata had proved the "illness or communicable disease" exclusion applied). *See Rodgers*, ¶ 19, 135 P.3d at 575 ("inconsistent . . . findings of fact" fall under the rubric of arbitrary and capricious agency actions) (quoting *Decker*, ¶ 24, 124 P.3d at 694). *See also, U.S. Chamber of Commerce v. U.S. Dep't of Labor*, 885 F.3d 360, 382 (5th Cir. 2018) ("Illogic and internal inconsistency are characteristic of arbitrary and unreasonable agency action."); *Peoples Nat. Gas Div. v. Public Util. Comm'n*, 698 P.2d 255, 264-65 (Colo. 1985) (concluding the Public Utility Commission's order was arbitrary and capricious because its findings were internally inconsistent). Moreover, the OAH's decision that Tata had met its burden in establishing the applicability of the "illness or communicable disease" exclusion is not supported by substantial evidence or in accordance with the law.

[¶35] As noted above, § 27-14-102(a)(xi)(A) excludes from coverage "[a]ny illness or communicable disease unless the risk of contracting the illness or disease is increased by the nature of the employment." In interpreting a statute, "[o]ur goal is to give effect to the intent of the legislature, and we 'attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute.'" *Craft v. State ex rel. Wyo. Dep't of Health*, 2020 WY 70, ¶ 26, 465 P.3d 395, 402 (Wyo. 2020) (quoting *Krenning v. Heart Mountain Irrigation Dist.*, 2009 WY 11, ¶ 9, 200 P.3d 774, 778 (Wyo. 2009)).

[¶36] The ordinary meaning of "illness" is "sickness" or "an unhealthy condition of body or mind." *See* https://www.merriam-webster.com/dictionary/illness. A "communicable disease" is defined as

> an infectious disease (such as cholera, hepatitis, influenza, malaria, measles, or tuberculosis) that is transmissible by contact with infected individuals or their bodily discharges or fluids (as respiratory droplets, blood, or semen), by contact with contaminated surfaces or objects, by ingestion of contaminated food or water, or by direct or indirect contact with disease vectors (as mosquitoes, fleas, or mice)."

*See* https://www.merriam-webster.com/dictionary/communicabledisease.

[¶37] Mr. Vinson sought benefits for the wound to his knuckle. Tata did not claim, nor did it present any evidence, that a scrape is an "illness" or a "contagious disease." Rather,

12

its whole argument that the "illness or communicable disease" exclusion applied was grounded in its misidentification of Mr. Vinson's injury as the Strep A infection and necrotizing fasciitis, rather than the damage to Mr. Vinson's knuckle. Tata did not meet its burden in establishing Mr. Vinson's injury, the scrape, was excluded from coverage under the "illness or communicable disease" exclusion.

## CONCLUSION

[¶38] The district court did not abuse its discretion in extending the deadline for Mr. Vinson to file his Petition based on a finding of excusable neglect. The district court correctly rejected the OAH's decision that the "illness or communicable disease" exclusion applied as that decision was arbitrary and capricious and not supported by substantial evidence or in accordance with the law.

[¶39] We affirm.